967 F.2d 597
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
YUMA TITLE & TRUST, an Arizona corporation, Plaintiff,
v.
Mary Jane LANE, Defendant-Appellant,
and
UNITED STATES INTERNAL REVENUE SERVICE, Defendant-Appellee.
 No. 91-15010.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 10, 1992.
Decided June 16, 1992.
 
 Before JAMES R. BROWNING, PREGERSON and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Mary Jane Lane appeals the district court's decision denying her motion for summary judgment and granting the government's cross-motion for summary judgment. Both parties were responding to an interpleader action initiated by Yuma Title & Trust ("Yuma Title") in Yuma County, Arizona Superior Court. In that action, Yuma Title requested a declaration of the priority of claims to proceeds from an escrow account. We affirm the district court's decision.
 
 
 3
 Mary Jane Lane loaned her son, C. Bradley Lane ("taxpayer"), $190,000 in 1978 for the purchase of realty in Yuma County, Arizona. Ms. Lane obtained and recorded from taxpayer a mortgage and a deed of trust on the property securing a five-year promissory note. After the taxpayer made several payments on the note, a dispute arose over the remaining liability under the note. This resulted in a lawsuit between Ms. Lane and taxpayer in the state court.
 
 
 4
 In the state action, taxpayer maintained that he had fully satisfied the $190,000 note. Ms. Lane argued that taxpayer was obligated under the note and mortgage to pay interest and to repay several additional loans made by Ms. Lane to taxpayer. Ms. Lane asserted that the parties had orally agreed to fix an interest rate payable on the note and to include the subsequent loans as secured under the mortgage.
 
 
 5
 While the lawsuit between Ms. Lane and taxpayer was pending, taxpayer received an offer for sale on the mortgaged property. Ms. Lane agreed to sign a satisfaction of mortgage so that taxpayer could properly sell the property. In return, taxpayer agreed to place the $275,000 in proceeds of the property sale into an escrow account for the benefit of Ms. Lane and taxpayer pending the outcome of their litigation. According to the agreement, taxpayer received one-half of the interest from the escrow account during this time.
 
 
 6
 After the above escrow account was created, the federal government assessed taxes against the taxpayer on March 4, 1987 and May 25, 1987. Notices of federal tax liens relating to the two assessments were filed with the County Recorder, Yuma County Arizona, on September 23, 1987.
 
 
 7
 On December 21, 1988, after the assessment and filing of the federal tax liens, Ms. Lane and taxpayer settled their lawsuit. Under the settlement Ms. Lane would receive $160,000 as a return of principal and the remainder of the escrow account would be placed into a trust established for the benefit of Ms. Lane and taxpayer. Ms. Lane would receive the income generated from the trust up to the time of her death. At that time, the corpus of the trust would revert to taxpayer.
 
 
 8
 On January 12, 1989, the federal government served a notice of tax levy on Yuma Title for the escrow account. Yuma Title had already distributed $160,000 to Ms. Lane, but had not yet complied with the other provisions of the settlement agreement. Instead, Yuma Title filed an interpleader action in state court in May 1989 to determine the priority of competing claims on the remaining amount of the settlement.
 
 
 9
 Ms. Lane moved for summary judgment on the ground that Yuma Title should disburse the contested balance of funds as required by the settlement agreement. The United States removed the action to federal district court, and filed an answer and cross-motion for summary judgment. The government argued that it possessed a superior claim to the fund because it had assessed and filed tax liens in 1987 and because Ms. Lane's alleged secured interest had already been satisfied with the $160,000 disbursement.
 
 
 10
 We review a district court's grant of summary judgment de novo. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 629 (9th Cir.1987). Our inquiry is whether, viewing the evidence in the light most favorable to the nonmoving party, any genuine issues of material fact remain disputed and the moving party is entitled to judgment as a matter of law. Judie v. Hamilton, 872 F.2d 919, 920 (9th Cir.1989); Fed.R.Civ.P. 56
 
 Discussion
 
 11
 On appeal this case presents four issues for us to resolve: (1) whether Ms. Lane had a secured interest in the escrow account for more than the $160,000 she originally received; (2) whether the government perfected its lien on the escrow account prior to Ms. Lane's interest in that account; (3) whether the escrow account was the property of taxpayer so that the government could assess a tax lien on it; and (4) whether the government properly perfected by filing or otherwise it's lien against taxpayer's property.
 
 
 12
 The relative priority of a federal tax lien is a question of federal law while state law determines the nature and extent of a taxpayer's interest in the property. United States v. Pioneer American Insurance Company, 374 U.S. 84 (1963); Aquilino v. United States, 363 U.S. 509 (1960). The federal law which governs the priority of respective liens is essentially a "first in time is the first in right" standard. United States v. City of New Britain, 347 U.S. 81, 85-86 (1954).
 
 Extent of Ms. Lane's Security Interest
 
 13
 Ms. Lane argues on appeal that her security interest in the escrow account was greater than the original $160,000 she received from it. If Ms. Lane possessed such an interest before the government assessed the tax liens in 1987, then she would be entitled to a superior claim under the first-in-time, first-in-right analysis. The district court held that Ms. Lane had a limited security interest of $190,000 which was completely extinguished with the $160,000 disbursement from the escrow fund.[1] We agree with the district court.
 
 
 14
 Ms. Lane's security interest was limited to the mortgage she obtained and recorded securing the $190,000 promissory note which explicitly provided for no interest. Furthermore, there was no mention in the mortgage that it was "open-ended", i.e., subject to additional loans to be secured by the deed of trust.
 
 
 15
 Ms. Lane claims that she made an oral agreement with the taxpayer that she would receive interest on the note and that future loans by her to the taxpayer would be covered under the mortgage. Under Arizona law, an oral agreement or promise to modify or extend a mortgage is not permitted. Ariz.Rev.Stat.Ann. § 33-701 (1990) (a mortgage "may be created, renewed or extended only by writing"). Consequently, any alleged oral modification or extention concerning either interest payments or additional loans is not to be considered in determining Ms. Lane's security interest. See United States v. Polk, 822 F.2d 871, 874 (9th Cir.1987) (citing Best Fertilizers of Arizona, Inc. v. Burns, 116 Ariz. 492, 493, 570 P.2d 179, 180 (1977) (en banc)) ("According to Arizona law, a mortgagee's interest does not survive the discharge or satisfaction of the underlying debt, regardless of the mortgagee's intent.").
 
 Priority of Ms. Lane's Unsecured Interest
 
 16
 Once Ms. Lane's original mortgage security interest was satisfied, the question shifted to whether her unsecured interest in the remainder of the escrow account was perfected before the assessment or filing of the federal tax lien. For an unsecured creditor's interest to attach, it must be "choate", or specific and perfected. A claim is specific and perfected when the identity of the lienor, the property subject to the lien, and the amount of the lien are established. United States v. Equitable Life Assurance Society of the U.S., 384 U.S. 323, 327-328 (1966) (citing United States v. City of New Britain, 347 U.S. at 85).
 
 
 17
 The district court found that the government's tax lien was perfected before Ms. Lane's remaining unsecured interest became choate. We agree. When the federal tax lien attached in 1987, Ms. Lane's interest in the escrow account for the amounts above and beyond her mortgage security interest was not only uncertain in amount but yet to be incurred and paid. Indeed, it must be noted that at the time of the tax assessments, Ms. Lane's claims to her security interest were also uncertain.
 
 
 18
 Ms. Lane possessed a potential or contingent right during the existence of the escrow account, not a judgment lien. Her interest was not clarified until she and taxpayer settled their dispute in December 1988, over one year after the federal tax lien. Thus, the federal tax lien was assessed and filed before Ms. Lane's claim became choate and is superior because of it. United States v. Security Trust & Savings Bank, 340 U.S. 47, 50 (1950) (federal tax liens take precedence over inchoate attachment liens where numerous contingencies might arise that would prevent attachment lien from becoming perfected by a judgment awarded and recorded). See also Bjork v. United States, 486 F.2d 934, 938 (7th Cir.1973) (under state law, claimant entitled to a cache of taxpayer's property only insofar as no perfected liens attached to the property prior to the determination of the liability to the claimant).
 
 
 19
 Taxpayer's Property Interest in Escrow Account
 
 
 20
 On appeal, Ms. Lane also raises the issue that the federal government could not assess a tax lien upon taxpayer in 1987 because the taxpayer did not have a sufficient property interest in the escrow account because he was restricted in his use of the account. We reject this contention and agree with the district court that taxpayer did have a property interest in the escrow account. We find that the escrow account was simply a repository of the taxpayer's property to satisfy a potential but uncertain liability to his mother. Before her interest became certain, the federal tax lien attached to the funds.
 
 
 21
 Section 6321 of the Internal Revenue Code of 1986 provides that if a person neglects or refuses to pay his taxes, a lien in the amount of the deficiency will be assessed "upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321 (emphasis added). Whether a taxpayer has an interest in property or whether the property belongs to the taxpayer is governed by state law. Schmit v. United States, 896 F.2d 352, 353 (9th Cir.1989).
 
 
 22
 Arizona law does not specifically address the extent and composition of property interests in an escrow account to be distributed after litigation is settled. In the instant case, however, the district court properly considered in finding the taxpayer's property interest that the escrow account was funded by the proceeds of the sale of real property owned by taxpayer. Furthermore, the escrow instructions stated that the escrow was established for the benefit of taxpayer along with Ms. Lane.
 
 
 23
 A review of Arizona law supports a finding of the taxpayer's interest in the escrow account. Arizona law defines escrow as a transaction where property is delivered to "a person not otherwise having any right, title or interest therein." Ariz.Rev.Stat. § 6-801. By implication, the parties to an escrow account have some distinct rights to the property. Arizona law also creates for the escrow agent a duty of trust and confidence to the principals of the escrow. Maganas v. Northroup, 135 Ariz. 573, 576, 663 P.2d 565, 568 (1983). Taxpayer was certainly a principal to the escrow. Finally, we also recognize that taxpayer had a property interest in the escrow account by the fact that he received one-half of the interest from the account before settlement.
 
 
 24
 Ms. Lane contends that the interests involved in the escrow account present a similar situation as was faced in United States v. Pan American Bank of Miami, 13 A.F.T.R.2d 996 (S.D.Fla.1964) and Wolverine Ins. Co. v. Phillips, 165 F.Supp. 335, 353 (N.D.Iowa 1958), appeal dismissed per stipulation, 283 F.2d 518 (8th Cir.1960). Both these cases involved the rights of sureties on a bond of a defaulting contract where the defaulting party was found not to have any property interest in an escrow for the claims against the defaulter by the subcontractors or the sureties. The escrows involved in Pan American Bank and Wolverine Ins. Co. were created for the benefit of parties other than the taxpayer. These cases are inapposite to the instant case where the escrow was indeed created for the benefit of taxpayer as well as Ms. Lane.
 
 
 25
 We also reject the notion that any restriction on the escrow account imposed on taxpayer renders the property not subject to federal tax liens. The Ninth Circuit has held that certain limited restrictions on a taxpayers right to a property interest does not prevent the government from attaching a tax lien on that property. Peoples National Bank of Washington v. U.S., 777 F.2d 459 (9th Cir.1985) (depositor in bank retained interest for tax lien to attach even though account was subject to potential setoff by bank).
 
 
 26
 Adequacy of Government's Attachment of Tax Lien
 
 
 27
 The district court found that the government tax liens were perfected upon assessment of the liens in 1987 pursuant to 26 U.S.C. § 6321. While automatic attachment might be applicable to the facts in this case, we hold that the government's filing of the lien in September 1987 was proper and sufficiently provided notice to any potential holders of security interests. See 26 U.S.C. § 6323(a).
 
 
 28
 Section 6323(f) of the Internal Revenue Code provides that to be valid against a security holder, the tax lien must be filed in the office designated by state law where the property is situated. Real property is deemed to be situated at its physical location. 26 U.S.C. § 6323(f)(2)(A). Personal property is deemed to be situated at the residence of the taxpayer at the time the notice of lien is filed. 26 U.S.C. § 6323(f)(2)(B). If the residence of the taxpayer at the time of the filing is outside of the United States, the government must then file in the District of Columbia. 26 U.S.C. § 6323(f)(2).
 
 
 29
 Ms. Lane argues that when the federal government filed its lien in Yuma County in September 1987, taxpayer was living in Australia and the proper location for filing should have been the District of Columbia. We disagree.
 
 
 30
 A principal purpose of the 1966 Tax Lien Act in using residence filing was to "increase the likelihood that creditors, generally, will receive notice as to taxpayers' standing with the Government." Corwin Consultants, Inc. v. Interpublic Group of Companies, Inc., 512 F.2d 605, 610 (2nd Cir.1975), quoting 3 U.S.Code Cong. & Admin.News, 89th Cong., 2d Sess.1966, at 3731.
 
 
 31
 The issue of residence is to be determined considering a variety of factors, including the taxpayer's physical presence as an inhabitant and not a mere transient, Myers v. Commissioner, 180 F.2d 969, 971 (4th Cir.1950); the permanence of that presence, In re Watson, 99 F.Supp. 49, 54 (W.D.Ark.1951); the reason for the taxpayer's presence; and the existence of other residences. In general, the taxpayer resides for the purposes of this statute where he dwells for a significant amount of time and where creditors would be most likely to look for him. Corwin Consultants, Inc. v. Interpublic Group of Companies, Inc., 512 F.2d at 610. Congress deliberately chose the term "residence" over "domicile" in this statute in order to ease the burden for creditors in searching for federal tax liens and for the IRS in filing notices of such liens. Urban Industries, Inc. of Kentucky v. Thevis, 670 F.2d 981 (11th Cir.1982).
 
 
 32
 We hold that taxpayer was a resident of Yuma County for the purposes of the Tax Lien Act. The real property as well as the escrow was situated in Yuma County, and the potential creditor Ms. Lane was well aware of this. Taxpayer testified that he had resided in Yuma County since 1975 and that his mailing address was there. Although taxpayer had not spent too much time in Yuma County during the year of his testimony, the facts clearly show that he lived a transitory existence. Taxpayer testified that he only travelled around Australia and that he had no permanent address there, only a mailing address. Indeed, taxpayer explicitly testified that he did not reside in Australia and he was not even in Australia in September 1987 when the liens were filed. Taxpayer is not raising this issue; Ms. Lane as a potential creditor is the interested party and she had good reason to know where to find the filed lien. Thus, there was no genuine issue of material fact as to the proper filing by the government.
 
 
 33
 The district court's decision to deny Ms. Lane's motion for summary judgment and to grant the United States' cross motion for summary judgment is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 There existed undisputed testimony from the lawsuit between Ms. Lane and taxpayer that the latter had made three payments to his mother totaling $76,000. This amount combined with the $160,000 obtained from the settlement more than satisfies the mortgage