663 P.2d 565

Thomas MAGANAS and Jane Doe Maganas, his wife, Defendants-Appellees,

v.

Porter NORTHROUP and Edith Northroup, his wife; and Transamerica Title Insurance Company of California, a California corporation, Defendants-Appellants.

No. 16282–PR.

Supreme Court of Arizona,
En Banc.

May 4, 1983.

**574**

Rubin, Rubin & Cronin by Richard J. Rubin, Phoenix, for defendants-appellees.

Jennings, Strouss & Salmon by Lee E. Esch, Phoenix, for defendants-appellants.

HOLOHAN, Chief Justice.

This is the second occasion that the present case has been before this court. *See Maganas v. Northroup*, 112 Ariz. 46, 537 P.2d 595 (1975).

The trial court in this matter initially granted appellants' Northroup and Transamerica Title Insurance Co., motion for summary judgment against appellee Maganas on grounds that appellee was not a licensed real estate broker or salesman in Arizona and, hence, barred by statute from collecting a real estate commission. Maganas appealed. We acquired jurisdiction of the appeal and vacated the summary judgment holding that the transaction was one for the sale of stock, not real estate, and that the sale was exempt from the Securi-

ties Act as an isolated sale by the bona fide owner pursuant to A.R.S. § 44–1844(3). *See Maganas v. Northroup, supra.* Appellee, thus, was not barred from collecting a commission because of noncompliance with the licensing provisions of Arizona's Securities Act.

After remand to the Superior Court the parties submitted the issues to the trial court on a set of stipulated facts. The trial court entered judgment in favor of Maganas and against appellants, Northroup and Transamerica Title Insurance Co. (hereinafter Transamerica). The Northroups and Transamerica appealed, and the Court of Appeals reversed the trial court's judgment. We granted the petition of Maganas for review. The memorandum decision of the Court of Appeals is vacated, *Maganas v. Northroup*, No. 1 CA–CIV 5401, filed Sept. 23, 1982.

The facts essential to the resolution of this case are that Porter and Edith Northroup, licensed Arizona real estate brokers, held a listing from Mary Martori for property called the "Mary E" Ranch. Mary Martori was the sole stockholder of the Fred G. Hilvert Co., Inc., the corporate owner of the ranch. The Northroups contacted D.C. McCredie, a California real estate broker, and his licensed salesman, Maganas, to assist in finding a purchaser. Any commission received from the sale was to be split one-third to Northroup and two-thirds to McCredie. In addition, there was an agreement that McCredie's two-thirds share was to be split 60% to appellee and 40% to McCredie.

Maganas secured a purchaser for the stock of the Fred G. Hilvert Co., Inc. As a result, an escrow was established with Transamerica which provided that the buyer, Kerr, would purchase all of the stock of the Hilvert Corporation, whose sole asset was the "Mary E" ranch.

The escrow instructions provided for a broker's commission of $62,500.00. Edith Northroup, the Arizona broker, signed the escrow instructions on behalf of herself and as agent for McCredie and Maganas. Paragraph 56 of the escrow instructions provided:

"Edith Northroup, by execution hereof, acknowledges that she, on behalf of herself, D.C. McCredie and Thomas McGannis [sic] has agreed to accept the sum of $62,500.00 as and for payment in full for all fees and commissions due solely from Seller by reason of their activities in connection with the purchase and sale of stock of the Fred G. Hilvert Co., Inc. and the Mary E. Ranch, and that payment shall be made by Seller as follows:
'(a) cash upon close hereof in the sum of $25,000.00,
'(b) a percentage of all amounts only and as received by the Seller on account of payment made on the primary note delivered by the Buyer, pursuant to paragraph 47(a) hereof, . . .' "

Pursuant to the terms of the escrow, $25,000 in cash was deposited with Transamerica as the amount of commission then due.

Before disbursement could be made, Kerr, the buyer, filed suit, claiming that Maganas owed him money for costs incurred in negotiating the purchase. Kerr later agreed to a partial disbursement of the commission. Acting on amended escrow instructions, issued by Northroup and approved by McCredie, Transamerica distributed $8,333.34 to Northroup and $11,833.33 to McCredie. This amendment was made without the knowledge or consent of Maganas. After the disbursements there remained $4,833.34. Transamerica was allowed to interplead that amount and Maganas successfully moved for summary judgment with respect to those funds.

Appellee also filed the current action against Northroup, McCredie and Transamerica, alleging generally that he was deprived of a substantial portion of his commission when Transamerica acted on a change of instructions from McCredie and Northroup which excluded him.

Appellee obtained a default judgment against McCredie in the amount of $9,167 actual damages and $9,000 for punitive damages. McCredie subsequently filed a petition for bankruptcy and was discharged.

After the case was submitted on the stipulated facts, the trial court entered judgment in favor of appellee finding that the escrow instructions named Maganas as a third party beneficiary of the contract between the buyer and seller and the Arizona brokers (Edith and Porter Northroup). In its formal judgment the trial court found:
"1. That the transaction was a securities transaction, exempt under A.R.S. Section 44–1844(3) and that Maganas was therefore not excluded from receiving a commission on this transaction.
2. That Transamerica Title Insurance Company owed a duty to carry out the escrow instructions and breached its duty when it accepted a change of instructions from McCredie and Northroup which excluded Maganas.
3. That both the Northroups and Transamerica Title Insurance Company are liable for this breach of contract in the sum of $10,000.00, plus interest at the rate of six percent (6%) per annum from the date the escrow was paid less a credit of $4,073.34 which sum was paid to Maganas, plus six percent (6%) per annum on that sum from that date.
4. That there is no basis for a finding of punitive damages and the same are denied."

The first issue raised on appeal is whether the trial court erred in finding that appellee was a third party beneficiary of the escrow agreement.

Whether a third-party is merely an incidental beneficiary, or one for whose express benefit the contract was entered into and therefore one who can maintain an action on the contract, is always a question of construction. *Irwin v. Murphey*, 81 Ariz. 148, 302 P.2d 534 (1956). The construction of the contract is a question of law for the court. *Hadley v. Southwest Properties, Inc.*, 116 Ariz. 503, 570 P.2d 190 (1977).

In its minute entry of January 4, 1980, the trial court found:
"The escrow instructions provide that he [appellee], as a third party beneficiary of a contract between a buyer and seller in Arizona, and the two participating brokers, would receive part of the commission. Mrs. Northroup signed those es-

crow instructions for herself as the Arizona broker, McCredie, the California broker, and Maganas, the California salesman. Transamerica accepted those instructions and had a duty to carry them out. This duty was breached when it accepted a change of instructions from McCredie and Northroup which excluded Maganas. This was a clear breach of Northroup's and Transamerica's contractual duties...."

There is ample evidence in the record to support the trial court's conclusion that Maganas was a third party beneficiary. On its face the contract indicates the parties' intent to recognize the appellant as a direct beneficiary of the escrow agreement. Paragraph 56 of the escrow instructions specifically named the appellee as one entitled to share in the commission of $62,500. It provided that Edith Northroup, the Arizona broker, would accept disbursement of the commission individually and as agent for Maganas and McCredie. The contract manifests the parties' intent to confer a direct benefit on Maganas. The trial court was correct in holding Maganas was a third-party beneficiary of the escrow agreement and hence entitled to maintain an action on the contract.

The second issue presented for review is whether the trial court erred in finding Transamerica liable for negligent breach of the escrow agreement.

Maganas contends that Transamerica violated its fiduciary duty as escrow agent when it accepted amended escrow instructions from Northroup which changed the method of disbursement of the commission without his consent.

■ The relationship of the escrow agent to the parties to the escrow is one of trust and confidence. *Tucson Title Insurance Co. v. D'Ascoli*, 94 Ariz. 230, 383 P.2d 119 (1963). The escrow relationship gives rise to two distinct fiduciary duties. The first is the escrow agent's duty of strict compliance. An escrow agent's duty to its respective principals is to act in strict accordance with the terms of the escrow agreement. *Malta v. Phoenix Title & Trust Co.*, 76 Ariz. 116, 259 P.2d 554 (1953). Devi-

ation from those terms without the mutual consent of the parties concerned will subject the agent to liability for damages caused by such deviation. *Tuscon Title Insurance Co. v. D'Ascoli, supra.* The second duty incident to the escrow relationship is the escrow agent's duty to disclose known fraud. Recently, in *Berry v. McLeod*, 124 Ariz. 346, 604 P.2d 610 (1979), we held:

"Generally, there is no duty to disclose information received by an escrow agent unless such a duty is required by the terms of the agreement, but we hold that there is an exception to the foregoing rule when the escrow agent *knows* that a fraud is being committed on a party to an escrow and the failure of the escrow agent to disclose the information of the fraud will assist in accomplishing the fraud; under such conditions the escrow agent has a duty to disclose the facts actually known." 124 Ariz. at 352, 604 P.2d at 616, emphasis in original.

Maganas does not argue, nor does the record reveal, that Transamerica violated any specific term of the escrow agreement. Transamerica's transgression, if any, lies in its acceptance of amended escrow instructions from Northroup which changed the method of disbursement of the commission without the knowledge or consent of Maganas.

■ The question becomes whether Transamerica's acceptance of amended escrow instructions was a deviation from the terms of the escrow so as to constitute a breach of its duty of strict compliance. We answer the question in the negative.

The record reveals that the amendment was executed without Maganas' signature or consent. The record also reveals, however, that the appellee appointed Edith Northroup as his agent to represent him in the execution of the escrow documents. She signed the escrow agreement on his behalf. And, under the escrow instructions, she was to receive the entire broker's commission on behalf of herself and as agent for Maganas and McCredie. Maganas specifically clothed Northroup with authority to act on his behalf with respect to his share of the broker's commission. As we stated

in *Brutinel v. Nygren,* 17 Ariz. 491, 154 P. 1042 (1916):

> "So far as the authority of an agent involves the rights of innocent third persons, who have relied upon the character bestowed upon the agent, the principal is bound equally by the authority which he actually gives and by that which by his own act he appears to give, and this is true, whether we call the agency a special or a general one." 17 Ariz. at 498, 154 P. at 1045.

Transamerica was not obligated to obtain appellee's consent to the amended instructions, since the amendment was submitted and executed by his own agent. Nor was Transamerica obligated to question Northroup's authority to amend the escrow and direct payment of a portion of the commission to someone other than herself, since the original escrow instructions gave her authority to receive the entire commission. We find therefore that Transamerica did not breach its duty of strict compliance.

We are also unable to find Transamerica liable under the disclosure rule announced in *Berry v. McLeod, supra.* In *Berry,* we held that an escrow agent's duties extend beyond the express instructions in an escrow agreement where the escrow agent's failure to disclose a fraud will assist the perpetration of the fraud. That duty to disclose information not required by the escrow agreement exists only when the agent *"knows* that a fraud is being committed on a party to an escrow." *Berry v. McLeod, supra,* (emphasis in original). The stipulated facts are insufficient to support a conclusion that Transamerica knew of any fraud. The appellee appointed Northroup as his agent to represent him in the execution of the escrow documents. Transamerica was entitled to rely on Northroup's authority to act on Maganas' behalf with respect to the commission.

The final issue raised on appeal is whether there is sufficient evidence in the record to support the trial court's finding that appellee was entitled to 60% of McCredie's two-thirds share of the commission.

In their stipulation of facts submitted to the trial court, the parties incorporated by reference facts found in this court's previous opinion.

> "19. The Az.S.Ct. acquired jurisdiction over the appeal pursuant to 17(a) A.R.S., S.Ct. Rule 47(E)(5), and on June 26, 1975, filed the formal written opinion reversing the summary judgment entered by the Honorable Philip W. Marquardt of April 20, 1972. The parties have agreed that the Court may consider such pleadings as it deems relevant and the formal written opinions of the Court of Appeals and the Supreme Court in connection with its deliberations and determination of the issues herein." Stip. of Facts, No. 109 in instruments of record on appeal.

In our previous opinion in this litigation we stated:

> "The escrow instructions also provided for a commission of $62,500.00 to be divided, one-third to the Northroups and the remaining two-thirds to be paid 40% to McCredie and 60% to Maganas." *Maganas v. Northroup,* 112 Ariz. at 47, 537 P.2d at 596.

Parties to litigation are bound by their stipulations unless relieved therefrom by the court. *See Industrial Park Corp. v. U.S.I.F. Palo Verde Corp.,* 19 Ariz.App. 342, 507 P.2d 681 (1973).

The record supports the conclusion that Northroup was aware of McCredie's and Maganas' method of sharing the commission. She acted as agent for them in the execution of the escrow documents. When she instructed Transamerica to pay the entire two-thirds to McCredie without securing the consent of Maganas, she failed to live up to the requirements of her agency and is liable in damages.

Accordingly, we affirm the judgment of the trial court against Edith Northroup, but we reverse the judgment against Transamerica.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.