AMERICAN STATE BANK, a Corporation, now known as First Dakota National Bank, Plaintiff and Appellee,

v.

Robert W. ADKINS and Martha Adkins, Defendants and Appellants,

and

Bancomp Services, Inc., successor to Deam Investments, Defendant.

No. 16904.

Supreme Court of South Dakota.

Considered on Briefs April 25, 1990.

Decided July 18, 1990.

Michael S. McKnight of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for defendants and appellants.

Steven M. Johnson of Brady, Reade & Johnson, Yankton, for plaintiff and appellee.

\* Now known as First Dakota National Bank.

SABERS, Justice.

Robert and Martha Adkins (Adkins) appeal from a summary judgment on their counterclaim against American State Bank \* (Bank) for breach of an escrow agreement.

## FACTS

In 1984, Adkins were the only shareholders of Central Finance Corporation (Central) and were looking for a buyer. The only substantial assets of Central were three subsidiaries: Central Acceptance Corporation, Cen/Lease, Inc., and First West Bank Leasing, Inc.

On June 1, 1984, Adkins agreed to sell Central to Deam Investments, Inc. (Deam Inv.). William Deam (Bill) was the majority shareholder and president of Deam Inv. At the same time, he was executive vice president and a director and shareholder of Bank. Another Bank officer, Karen Langley, was also a shareholder of Deam Inv. Bill's father, James Deam, was chairman of Bank's board of directors and a member of the board of directors of Bank's trust department.

The purchase of Central involved three separate documents: a stock purchase agreement, a secured promissory note, and an escrow agreement. The stock purchase agreement basically provided that Deam Inv. would pay $393,762.89 for all 507 shares of Central. Adkins received $38,550 as a down payment, leaving a balance due of $355,212.89. The promissory note provided that the unpaid balance was to be paid in five annual installments of $90,000 each. The escrow agreement required Adkins to deposit certificates evidencing 458 shares of Central with the Bank as escrow agent. Paragraph 3 of the escrow agreement provides:

> Sellers and Deam Investments authorize the Escrow Agent to keep and preserve the certificates evidencing the shares of Central in its possession as security for payment of the note.

Paragraph 5 of the escrow agreement provides in part: "So long as Deam Investments is not in default under the terms of

purchase, it shall have the unrestricted right to vote the shares on deposit with the Escrow Agent."

On September 30, 1984, Deam Inv. sold First West Bank Leasing to Bank for $1,000,000. In November of that year, a subsidiary of the Bank bought 100 shares of Cen/Lease from Deam Inv. for $309,750. The following September, the Bank bought the same 100 shares from its subsidiary for the same price.

Deam Inv. eventually defaulted on its obligation to Adkins, and the Bank instituted a declaratory judgment action to determine ownership of the shares of Central that it held in escrow. Adkins counterclaimed against the Bank, claiming:

1) breach of contract,

2) diminution in value of trust property, and

3) breach of fiduciary duty.

After default judgment was entered against Bancomp Services, Inc., the successor to Deam Inv., Adkins were declared owners of the shares. The Bank moved for summary judgment on Adkins' counterclaim, and the court granted the motion. Adkins appeal. We affirm on Issues 1 and 2, but reverse and remand on Issue 3.

## STANDARD OF REVIEW

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. SDCL 15–6–56(c); *Bego v. Gordon*, 407 N.W.2d 801 (S.D.1987). The moving party bears the burden of showing the absence of genuine issues of material fact. *Id.* If the moving party meets its burden, then the non-moving party may not rely upon its pleadings to resist the motion, but must present specific facts that show a genuine issue of fact does exist. *Baatz v. Arrow Bar*, 452 N.W.2d 138 (S.D.1990). When considering whether a genuine issue of material fact exists, the evidence must be viewed in a light most favorable to the non-moving party, and reasonable doubts are to be resolved against the moving party. *Groseth Int'l, Inc. v. Tenneco, Inc.*, 410 N.W.2d 159 (S.D.1987). "[S]ummary judgment is ap-

propriate to dispose of legal, not factual questions." *Id* at 164.

1. *Breach of contract and ambiguity of escrow agreement.*

Adkins claim the court erred in holding Paragraph 3 of the escrow agreement unambiguous as a matter of law. Adkins believe the paragraph is reasonably capable of more than one meaning, making the agreement ambiguous. In the alternative, they argue that even if the paragraph is unambiguous it has a different meaning than that given to it by the court.

When construing a contract, the court must ascertain and give effect to the intention of the parties. *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985). That intention is found in the contract language. *Id.* Unless the language is ambiguous or a different intention is manifested, the language in a contract is to be given its plain and ordinary meaning. *See Restatement (Second) of Contracts* § 202(3) (1981). Whether contract language is ambiguous is a question of law. *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149 (S.D. 1986). Language is ambiguous when a genuine uncertainty exists as to which of two or more meanings is correct. *North River Ins. Co. v. Golden Rule Constr., Inc.*, 296 N.W.2d 910 (S.D.1980).

Contrary to the assertions by Adkins, Paragraph 3 of the escrow agreement does not instruct the Bank to maintain the value of Central. Instead, it instructs the Bank "to keep and preserve the certificates." In other words, the concern of the Bank as escrow agent is upon the safety of the certificates rather than the value of the company.

Paragraph 5 of the escrow agreement further indicates that the Bank was not meant to regulate the value of Central. That paragraph specifies that Deam Inv. shall have the unrestricted right to vote the shares on deposit with the Bank as long as Deam Inv. is not in default on its payments to Adkins. As a result, the Bank, as escrow agent, has no power over the operation of Central. It could not prevent Deam Inv. from selling any of Central's assets.

Consequently, it would be nonsensical to require the Bank to maintain the value of Central without giving it the power to do so. The only reasonable interpretation is that the Bank was not to concern itself with the value of Central, but with the security of the certificates.

■ The court's interpretation of Paragraph 3 also fits within the general definition of an escrow. An escrow account is designed for a third person to hold the property of a promisor for delivery to the promisee upon the happening of a specific contingency or condition. *See Rushmore State Bank v. Kurylas, Inc.*, 424 N.W.2d 649 (S.D.1988). Here, the Bank was obligated to hold the stock certificates so that neither Deam Inv. nor Adkins could dispose of the shares until payment was complete. An escrow agent is not intended to function as an insurer for an agreement gone bad.

Therefore, the court did not err in its determination that Paragraph 3 of the escrow agreement was unambiguous or in its interpretation and construction of that paragraph. After consideration of the specific language of Paragraph 3, other provisions of the agreement and the definition of an escrow, it is apparent that the court's interpretation of the paragraph is the only reasonable interpretation.

### 2. *Duty to prevent property from diminishing in value.*

Adkins contend the Bank was obligated to prevent the property held in escrow from diminishing in value. They argue that an escrow agent is like a trustee and is under the same duty to maintain the value of the escrow property.

■ Adkins are incorrect in likening an escrow agent to a trustee. An escrow agent is an agent to all the parties of the escrow, making his duties different than a trustee. *Hannon v. Western Title Ins. Co.*, 211 Cal.App.3d 1122, 260 Cal.Rptr. 21 (1989). Furthermore, as explained in Issue 1., the Bank was without power to control the operation of Central. Instead, the property the Bank was obligated to keep and preserve was the certificates. Any loss of value was not the result of the conduct of the Bank as escrow agent and was outside their control.

### 3. *Breach of fiduciary duty.*

Adkins claim the court erred in concluding that the Bank, as escrow agent, did not breach a fiduciary duty owed to Adkins. They contend the Bank breached its fiduciary duty because it failed to preserve the value of the shares of Central and failed to notify Adkins about the purchase of Central's subsidiaries.

It is generally accepted that an escrow agent is the agent and fiduciary of all parties to an escrow agreement. *See, e.g., Kirby v. Palos Verdes Escrow Co., Inc.*, 183 Cal.App.3d 57, 227 Cal.Rptr. 785 (1986); *Maganas v. Northroup*, 135 Ariz. 573, 663 P.2d 565 (1983); *Southern Cross Lumber & Millwork Co. v. Becker*, 761 S.W.2d 269 (Mo.Ct.App.1988); *Eastern Atlantic Transp. and Mechanical Eng'g, Inc. v. Dingman*, 727 S.W.2d 418 (Mo.Ct.App. 1987); *Freegard v. First Western Nat'l Bank*, 738 P.2d 614 (Utah 1987); *Smith v. First Nat'l Bank & Trust Co. of Sturgis*, 177 Mich.App. 264, 440 N.W.2d 915 (1989); *Higgins v. Kittleson*, 1 Ariz.App. 244, 401 P.2d 412 (1965); *Patel v. Gannaway*, 726 F.2d 382 (8th Cir.1984). The extent of this agency and fiduciary relationship is necessarily limited, however, due to the escrow agent's obligation to act for all parties to the escrow. *See Kirby, supra; Gurley v. Bank of Huntsville*, 349 So.2d 43 (Ala. 1977); *Lee v. Title Ins. and Trust Co.*, 264 Cal.App.2d 160, 70 Cal.Rptr. 378 (1968).

■ Several fiduciary duties arise from the escrow relationship. First, the escrow agent is obligated "to act in strict accordance with the terms of the escrow agreement." *Maganas, supra*, 135 Ariz. at 576, 663 P.2d at 568; *accord Southern Cross Lumber, supra*. Second, the escrow agent has a fiduciary duty to disclose information about a known fraud being committed on a party to the escrow agreement. *Berry v. McLeod*, 124 Ariz. 346, 604 P.2d 610 (1979); *accord Maganas, supra*. However, an escrow agent has no duty to disclose other information to a party of the escrow agreement unless required by the

agreement. *Gurley, supra; Maganas, supra; Lee, supra; Berry, supra.* The reason for not imposing such a duty was explained by the court in *Lee:*

> [O]nce an escrow holder received information (from whatever source) he would be forced to decide independently whether to believe the information and disclose it or disbelieve it and conceal his knowledge. If he concealed his knowledge he would risk suit. If he discloses and the information is inaccurate, he may be sued by all parties to the escrow for interfering with their contract. Establishing a rule which would create such a dilemma and subject ... the escrow holder to a high risk of litigation would damage a valuable business procedure.

*Lee, supra,* 264 Cal.App.2d at 163, 70 Cal. Rptr. at 380. (Footnote omitted). Third, an escrow agent has a fiduciary duty to act scrupulously and honestly in carrying out his duties. *Dingman, supra.* Among other things, this last duty means the escrow agent may not act to defraud one of the parties to the escrow agreement, *Berry, supra,* profit personally as a result of his status as escrow agent. *Holmes v. McKey,* 383 P.2d 655 (Okla.1962). "[I]t is well settled that a fiduciary [escrow agent] must act with utmost good faith and avoid any act of self-dealing that places his personal interest in conflict with his obligations to the beneficiaries." *Trevino v. Brookhill Capital Resources, Inc.,* 782 S.W.2d 279, 281 (Tex.Ct.App.1989).

■ Adkins failed to present any specific facts that would show a genuine issue of material fact exists regarding the breach of the first duty. As discussed in Issue 1., the Bank complied with the escrow agreement by preserving the certificates evidencing the shares of Central stock. The terms of the agreement required it to do nothing more. Consequently, the Bank did not breach the first fiduciary duty.

■ The same cannot be said for the second fiduciary duty, which requires the Bank to disclose to Adkins any knowledge it possesses about a fraud being committed upon Adkins. Bank merely argues that Adkins did not plead that Bank knew of any fraud. However, such pleading is unnecessary because Adkins pled breach of fiduciary duty, and failure to disclose known fraud constitutes such a breach. As a result, Bank has not met its burden of establishing a lack of a genuine issue of material fact. Whether Bank knew about fraud is a material question of fact. Arguing that such knowledge was not specifically pled is insufficient to establish the lack of a genuine issue of fact.

■ Under the third fiduciary duty, Bank is obligated to act scrupulously and honestly in its business dealings with Adkins. Adkins claim this duty was breached because Bank purchased the subsidiaries of Central and failed to disclose these transactions to Adkins. Several factors suggest that this conduct constitutes a breach of duty. First, Bank's purchase of the subsidiaries of the company whose stock certificates it holds raises questions of conflict of interest and personal profit. Second, the interrelationship between the officers of the seller, Deam Inv., and the buyer, Bank, raise questions about fraudulent conduct. Likewise, the failure to notify Adkins of the transactions, especially when Robert was still chairman of the board of Central, raises questions about fraud. Whether this behavior constitutes a breach of duty is a question of fact. Adkins' ability to prove damages as a result of this claimed breach of fiduciary duty remains to be seen upon remand. Nevertheless, Bank fails to point to any evidence that would indicate these actions comply with its duty to act scrupulously and honestly. Without such a showing, Bank fails to meet its burden to show the absence of genuine issues of material fact. Therefore, the trial court erred in granting summary judgment on this issue. *Baatz, supra; Groseth, supra; Bego, supra.*

MORGAN, HENDERSON and MILLER, JJ., concur.

WUEST, C.J., deeming himself disqualified, did not participate.