# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 96-3334

———————

Paramount Technical Products,    *
Inc., a South Dakota    *
corporation,    *
   *
     Plaintiff/Appellee,    *
   *   Appeal from the United States
        v.    *   District Court for the
   *   District of South Dakota.
GSE Lining Technology, Inc., a    *
Delaware corporation, formerly    *
known as Gundle Ventures, Inc.;    *
Gundle/SLT Environmental, Inc.,    *
a Delaware corporation, formerly*
known as Gundle Environmental    *
Systems, Inc.; PG Technology    *
Co., a South Dakota general    *
partnership,    *
   *
     Defendants/Appellants.    *

———————

Submitted: March 10, 1997

Filed: April 29, 1997

———————

Before MAGILL, JOHN R. GIBSON, and MURPHY, Circuit Judges.

———————

MURPHY, Circuit Judge.

     This is a declaratory judgment action brought by Paramount Technical Products, Inc. (Paramount), seeking a determination that a proposed transaction would trigger an automatic termination clause in a licensing agreement. Paramount owns patents used to manufacture moisture barriers and sued to stop GSE Lining Technology, Inc., Gundle/SLT Environmental, Inc., and PG Technology

Co. from selling certain partnership interests and corporate stock to an entity which was not a party to licensing and partnership agreements entered into in 1989. Appellants counterclaimed for a declaration that the licenses would not terminate because the agreements must be read together. On cross motions for summary judgment, the district court[1] granted summary judgment for Paramount. We affirm.

Bryan and Patrick McGroarty were the original owners of patents used in the production of moisture barriers. The technology is used to manufacture liners which keep water out of buildings and other structures and is used to construct environmental containment systems which prevent leakage of liquids or gases. The McGroartys also owned two companies that are involved in manufacturing moisture barriers: Paramount, which held additional patents used in the manufacturing process, and Paratech, Inc.

On August 31, 1989, the McGroartys and their companies entered into two contracts with Gundle/SLT Environmental, Inc. (Gundle Environmental) and one of its wholly-owned subsidiaries, GSE Lining Technology, Inc. (GSE Lining).[2] In the first contract, Paratech agreed with GSE Lining to form a partnership named PG Technology Co.[3] for the purpose of constructing and operating a plant in

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

[2]At the time the contracts were executed, Gundle SLT/Environmental, Inc. was known as Gundle Environmental Systems, Inc., and GSE Lining Technology, Inc. was known as Gundle Ventures, Inc. They changed their names, along with several other Gundle entities, in 1995.

[3]In 1995, Gundle Environmental began to use the name GSE Clay Lining Technology to market the partnership and its product.

Spearfish, South Dakota to manufacture moisture barriers using the patents. On the same day, the McGroartys and Paramount entered into a second contract with the newly formed partnership and Gundle Environmental. This contract was called the Joint Licensing and Development Agreement, and it granted licenses to patents held by the McGroartys and Paramount to PG Technology. It stated the parties' understanding that PG Technology was owned "directly or indirectly" by Paramount and the Gundle entities, and Paramount signed the agreement on behalf of the partnership, PG Technology. The agreement also protected the licenses by providing in section 2.03 that the licenses would automatically terminate "if for any reason, the use of the licenses should come under control or use by others than the parties to this Agreement without the consent of Paramount, [Brian McGroarty] and [Patrick McGroarty]." PG Technology uses these patents in the manufacturing and marketing of a single product, Gundseal, and it sells that product to only two customers, GSE Lining and Paramount.

Subsequently there were changes in the legal forms of some of these entities and a variety of complicated transactions. These intricate business dealings need to be traced to understand the proposed transaction which triggered this lawsuit. About one year after the original agreements were executed, rights to the patents were affected when the McGroartys sold all of Paramount's stock to RPM, Inc. and executed a Technology and Patent Rights Assignment Agreement that assigned their patents to Paramount.[4] Thus, of the original parties to the licensing agreement, only Paramount, Gundle Environmental, and the partnership (PG Technology) remained involved. As a result of the assignment of patents, Paramount became the holder of all the patents which had been licensed under

---

[4]RPM then transferred all the Paramount stock to MAMECO, Inc., and Paramount became a wholly-owned subsidiary of MAMECO.

-3-

the licensing agreement to PG Technology. This transaction did not affect the structure of PG Technology, and the McGroartys continued to own Paratech, one of the partners in PG Technology.

Later, in December 1994, a new partner was admitted to PG Technology when a portion of the partnership interests was sold to a third party. Paratech, the company owned by the McGroartys and one of the partners in PG Technology, sold 99.999% of its 50% partnership interest in PG Technology to GSE International, Inc.,[5] another wholly-owned subsidiary of Gundle Environmental. The partnership agreement was amended to include GSE International as a new partner in PG Technology and to provide that the partnership would be managed by representatives appointed by the partners holding the majority share.

After this sale and amendment to the partnership agreement, PG Technology had three partners: Paratech, which had a .0005% interest in the partnership; GSE Lining, which had a 50% interest; and GSE International, which had a 49.9995% interest. The McGroartys still owned Paratech after the sale of its partnership interests, but as part of the sale of partnership interests, Paratech also gave Gundle Environmental an option to purchase all outstanding shares of Paratech stock. This transaction did not affect PG Technology, Gundle Environmental, and Paramount in respect to the licensing agreement.

The triggering event to this lawsuit occurred in January 1996, when Paramount learned of a proposed sale of PG Technology to Colloid Environmental Technologies Company (CETCO), one of Paramount's direct competitors. Gundle Environmental and PG

---

[5]At the time of the purchase, GSE International, Inc. was known as Gundle International, Inc.

-4-

Technology had signed a letter of intent in which they agreed to sell to CETCO the 99.9995% general partnership interest held by the Gundle Environmental subsidiaries, GSE Lining and GSE International. The letter of intent stated that Gundle Environmental and PG Technology would use their best efforts to deliver Paratech's .0005% partnership interest in PG Technology as well, and that "CETCO shall be assigned the liner patent license agreements through the purchase of [PG Technology]."

As a result of this proposed transaction, CETCO would ultimately own 100% of the partnership interests in PG Technology, and the Gundle entities and Paratech would no longer be partners in PG Technology. Gundle Environmental asked Paramount to prepare a letter stating that the transaction would not affect PG Technology's right to use the patents licensed by Paramount to PG Technology under the licensing agreement, but Paramount declined. Paramount stated that it believed the transaction would violate section 2.03 of the licensing agreement and would cause an automatic termination of the licenses.

Paramount then sued immediately, seeking a declaration that the licenses would be automatically terminated if the transaction occurred. Paramount argued that CETCO was not a party to the licensing agreement and that the transaction would permit CETCO to "control or use" the patents, triggering the automatic termination clause in section 2.03. Gundle Environmental, GSE Lining, and PG Technology denied that the licenses would be terminated by the transaction and counterclaimed for a declaration to that effect. In their counterclaim, they described a new transaction which would involve the transfer of partnership interests held by the Gundle Environmental subsidiaries, GSE Lining and GSE International, and the sale of Paratech stock to CETCO. At the district court, they characterized the transaction as involving the sale of 100% of

Paratech's stock to CETCO, followed by a transfer of partnership interests so that Paratech owned 100% of the partnership interests. On appeal, however, they have further refined the transaction and now claim that a majority of the partnership interests would be transferred to Paratech, and then 100% of Paratech stock would be sold to CETCO. As a result, Paratech would own the majority of the partnership interest in PG Technology, and Paratech would become a wholly-owned subsidiary of CETCO.

The district court granted Paramount's motion for summary judgment, concluding that the automatic termination clause in the licensing agreement would be triggered by the proposed transaction. Gundle Environmental, GSE Lining, and PG Technology appeal, arguing that the district court erred by not reading the partnership agreement and licensing agreement together and by finding that the transaction would effectively assign the licenses to CETCO. A grant of summary judgment is reviewed de novo. Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 270 (8th Cir. 1996).

In construing a contract, "the court must ascertain and give effect to the intention of the parties" as found in the contract language. American State Bank v. Adkins, 458 N.W.2d 807, 809 (S.D. 1990). The contract is to be construed as a whole, Johnson v. Johnson, 291 N.W.2d 776, 778 (S.D. 1980), and when two contracts are executed at the same time, by nearly identical parties, and as part of the same transaction, those contracts are to be read together. Baker v. Wilburn, 456 N.W.2d 304, 306 (S.D. 1990). When the language in a contract is unambiguous, it is to be given its plain and ordinary meaning. Adkins, 458 N.W.2d at 809.

Gundle Environmental, GSE Lining, and PG Technology contend that reading the two agreements together shows the licenses will not terminate. They assert that the partnership agreement permits

new partners to be added to the partnership, and the licensing agreement does not indicate that adding a partner or transferring stock of a partner will terminate the licenses.  They argue that the transaction now described would change only the ownership of one of PG Technology's partners, Paratech, while the control would still remain with PG Technology which is a party to the licensing agreement.

Section 2.03 of the licensing agreement uses broad language concerning when the licenses will automatically terminate.  It states that the licenses will be terminated automatically "<u>if for any reason, the use of the licenses should come under control or use by others than the parties to this Agreement without the consent of Paramount</u> . . . ." (emphasis added)  The language focuses on who has the ultimate "control or use" of the licenses and shows the intent of the parties to protect Paramount's patents and the licenses which Paramount granted.  Although the partnership agreement permits changes in the partnership, section 2.03 of the licensing agreement causes an automatic license termination if "control or use" falls to anyone other than a party to the licensing agreement.

The appellants argue that the partnership agreement specifically provides that new partners can be added.  Since the partnership is a party to the licensing agreement, they believe a change in partners should not terminate the licenses.  Neither agreement provides, however, that any new partner in the partnership thereby somehow becomes a party to the licensing agreement.  When the original agreements were entered into, the partnership agreement stated that it was executed by the partners in PG Technology, Paratech and GSE Lining.  The licensing agreement refers to the partnership agreement as "that certain agreement . . . dated as of August 31, 1989, by and between Paratech and [GSE

Lining]," indicating that new partners added to the partnership are not considered parties to the licensing agreement. If control were to move to someone not a party to the licensing agreement through a change in partners, such as CETCO, the consent of Paramount would therefore be necessary to avoid automatic termination. Paramount did not give that consent when asked.

Under the transaction as now described on appeal, the appellants urge that only the stock ownership of Paratech, one of the partners in PG Technology, would change. Since control of the licenses would remain with the partnership and it was a party to the licensing agreement, the termination clause would not apply. This transaction was not presented to the district court and we need not consider it, but it appears in any event that it would also cause the licenses to terminate. See Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519, 523-24 n.6 (8th Cir. 1996) (court is not required to consider variation of argument raised for first time on appeal but may in its discretion).

The language of the licensing agreement does not suggest that termination can be prevented if the licenses technically remain with the original parties, but directs that the licenses will terminate if "for any reason" control or use is with someone other than the parties to the licensing agreement. The licensing agreement sets forth the parties' understanding in entering into that agreement that the Gundle and Paramount entities directly or indirectly owned PG Technology, the party which would be using the patents. This understanding and the concern for protecting Paramount's patents are also demonstrated by the requirement of Paramount's consent for any changes in control or use of the patents. Furthermore, Paramount was the party which signed on behalf of PG Technology, even though Paramount was not a partner in

the partnership but only controlled one of the partners, Paratech. After the appellants' new proposed transaction, however, Paratech would become a wholly-owned subsidiary of CETCO, and Paratech would own, at a minimum, the majority interest of the partnership. As a result, CETCO would control the partnership and the licenses granted to it. Thus, even though the licenses would technically stay with the partnership throughout the changes in the stock ownership and partnership interests, control over the licenses would change, and under the terms of the licensing agreement, the licenses would terminate. Without this automatic termination, the result would be a transfer to Paramount's competitor of the right to use the patents without the required consent of Paramount.

The licensing agreement contains broad language indicating that the licenses will terminate if "control or use" of the patents is transferred to someone other than a party to the licensing agreement. While both the licensing agreement and partnership agreement were executed on the same day and must be read together, neither agreement indicates that parties to the licensing agreement would include any new partner to the partnership or any entity obtaining control of one of the partners. Under any of the proposed transactions, the "control or use" of the patents would be transferred to someone not a party to the licensing agreement, and the licenses would automatically terminate.[6]

For these reasons, the judgment of the district court is affirmed.

---

[6]Since the licenses would automatically terminate under the terms of the licensing agreement if the proposed transactions occurred, it is not necessary to discuss the issues of whether the transactions would assign the licenses to CETCO or whether that assignment would violate federal patent law.

A true copy.

        Attest:


                CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.