Appellee=s Second Motion for Rehearing Granted in Part; Affirmed in
Part, Reversed and Remanded in Part, Opinion on Rehearing filed January 19,
2006 Withdrawn; and Substitute Opinion on Rehearing filed March 30, 2006









Appellee=s Second Motion for
Rehearing Granted in Part; Affirmed
in Part, Reversed and Remanded in Part, Opinion on Rehearing filed January 19,
2006 Withdrawn; and Substitute Opinion on Rehearing filed March 30, 2006.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-03-01131-CV

_______________

 

HOME LOAN CORPORATION d/b/a

EXPANDED MORTGAGE CREDIT, Appellant

 

V.

 

TEXAS AMERICAN TITLE COMPANY,
Appellee

                                                                                                                                               


On Appeal from the 270th District Court

Harris County, Texas

Trial Court Cause No. 01‑50978

                                                                                                                                               


 

              S U B S T I T U T E   O P I N I O N   O N  
R E H E A R I N G

 

Appellee=s second motion for rehearing is
granted in part; our opinion on rehearing issued in this case on January 19,
2006 is withdrawn; and the following substitute opinion on rehearing is issued
in its place.








In
this mortgage loan closing dispute, Home Loan Corporation d/b/a Expanded
Mortgage Credit (AHome Loan@) appeals a summary judgment entered in favor of Texas
American Title Company (ATATCO@), and the denial of Home Loan=s motion for summary judgment, on the
ground that the evidence shows that TATCO breached its fiduciary duties as
escrow agent in the closing.  We affirm
in part, and reverse and remand in part.

                                                                   Background

TATCO
acted as settlement agent for the closing of a residential mortgage loan (the Aloan@) funded by Home Loan.  After Home Loan sold the loan in the
secondary market, no payments were made on it, and Home Loan was obligated to
repurchase it.  Home Loan filed suit
against TATCO (and others who are not parties to this appeal), alleging, as
relevant to this appeal, that TATCO breached fiduciary duties it owed Home Loan
by failing to: (1) inform Home Loan that the seller had requested over half of
the seller=s proceeds to be paid to the mortgage
loan broker; (2) inform Home Loan that (after the preceding request was denied)
the seller had requested that those 
proceeds be paid to the principal of the mortgage loan broker, Jeff
Kruichak, and that TATCO would comply with this request; and (3) accurately
disclose on the HUD-1 settlement statement (the AHUD-1@) how the proceeds would be or had
been disbursed.  The parties filed
cross-motions for summary judgment, disputing whether any such duties were owed
or had been breached, and the trial court granted TATCO=s motion and denied that of Home
Loan.

Both
parties= summary judgment materials and
briefs on appeal have addressed the duties owed by TATCO as if it were an
escrow agent in the loan transaction, even though no formal escrow agreement
was entered into by the parties.  However,
as discussed below, because TATCO has not established that the duties of an
escrow agent or any other type of closing or settlement agent are limited in
the manner that it contends, our disposition is not affected by whatever legal
distinctions may exist between such agents.

                                                            Standard
of Review








A
traditional summary judgment may be granted if the motion and summary judgment
evidence show that, except as to the amount of damages, there is no genuine
issue of material fact and the moving party is entitled to judgment as a matter
of law.  Tex. R. Civ. P. 166a(c). 
A no‑evidence motion for summary judgment must be granted if: (1)
the moving party asserts that there is no evidence of one or more specified
elements of a claim or defense on which the adverse party would have the burden
of proof at trial; and (2) the respondent produces no summary judgment evidence
raising a genuine issue of material fact on those elements.  See TEX. R. CIV. P. 166a(i).[1]

In
reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant and indulge every reasonable inference, and resolve any doubts, in
the nonmovant=s favor.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  Where, as
here, the parties file cross-motions for summary judgment, one of which was
granted and the other denied, we review the summary judgment evidence presented
by both sides, determine all questions presented, and affirm or reverse
accordingly.  See id.

                                                               Fiduciary
Duties

TATCO=s motion for summary judgment
asserted that its duties to Home Loan were limited to: (1) carrying out the
terms of the real estate contract and escrow agreement; and (2) disclosing any
actual knowledge of a scheme to defraud Home Loan (which is not alleged in this
case).  TATCO contends that it therefore
had no duty to disclose the seller=s funding requests to Home Loan
because: (1) TATCO was required to remain strictly impartial and not favor the
interest of any party to a closing over that of another; (2) an escrow agent
has no obligation to police the affairs of the participants or report
suspicious circumstances unless it has actual knowledge of a scheme to defraud;
and (3) the request that payment be sent to Texas State Mortgage Brokers, Inc.
(ATSMB@) and the actual disbursement of the
escrow funds to Kruichak occurred after the loan was funded by Home Loan, and,
thus, there is no evidence that TATCO=s actions caused Home Loan any
damage.

 

 








                                        Duty
to Disclose Seller=s Funding Requests

Even
where, as in this case, no formal escrow agreement has been entered into, a
title company that accepts funds for disbursement in a closing transaction for
a fee owes the party remitting those funds a duty of loyalty, a duty to make
full disclosure, and a duty to exercise a high degree of care to conserve the
money and pay it only to those persons who are entitled to receive it.  See City of Forth Worth v. Pippen, 439
S.W.3d 660, 664-65 (Tex. 1969).[2]
Ordinarily, a fiduciary duty of full disclosure requires disclosure of all
material facts known to the fiduciary that might affect the rights of the
person to whom the duty is owed.[3]  However, there is variation among the states
regarding the extent to which any such disclosure duty applies to escrow
agents.








Under
the Restatement and in at least one state, an escrow holder=s duties are limited to the
safekeeping of the escrow property and its delivery or return to the
appropriate party, as the case may be, in accordance with the agreement; and,
thus, entail no duty of disclosure whatever unless specified by the agreement.[4]  In at least two other states, an escrow agent
has no duty to disclose unless it has actual knowledge of clear evidence of
fraud.[5]  A further variation followed in at least two
other states is that, although not required to investigate, an escrow agent has
a duty to disclose facts that a reasonable escrow agent would perceive as
evidence of fraud.[6]  Finally, at least two other jurisdictions
prescribe that an escrow agent owes a duty to disclose all matters coming to
the agent=s notice or knowledge concerning the
subject of the agency that are material for the principal to know for his
protection or guidance.[7]

In
seeking to establish that Texas law limits its duty of disclosure to facts
involving known fraud, TATCO first relies on Pippen, in which a
settlement agent was found to have breached its fiduciary duties for failing to
disclose a fraudulent misapplication of funds. 
See 439 S.W.2d at 664-65. 
However, because Pippen involved only a fraudulent misapplication
of funds, it gives no express guidance concerning a duty of disclosure in any
other context.








TATCO
argues that Pippen must nevertheless be read as limiting the duty of
disclosure because it also recognizes a duty of loyalty to each party in the
escrow transaction, which, in turn, requires the escrow agent to remain neutral
and thereby precludes it from disclosing to one party any information obtained
from another if the disclosure could work to the detriment of the party from
whom it was obtained.  However, the duty
of loyalty is mentioned in Pippen only once without any elaboration,[8]
and the opinion contains no indication whatever of any duty of neutrality,
loyalty, or otherwise to any party other than the one remitting the settlement
funds and paying the settlement agent=s fee,[9]
much less that the agent=s duty of disclosure was in any way affected by any such
duties to others.  Moreover, Pippen=s use of the phrase, Aduty of full disclosure@[10] (emphasis added), its citation in
this context of Kinzbach, also applying the conventional fiduciary duty
of full disclosure,[11]
and Pippen=s
statements, AThe governing principles of law . . .
cannot be said to be new. . . .  To the
contrary, we are simply looking at traditional law as to fiduciaries@[12] are, if anything, at odds with TATCO=s contention that Pippen
actually envisioned a lesser duty of disclosure for settlement agents.

Apart
from Pippen, TATCO relies on the following language from Chapman
Children=s Trust and Equisource Realty to show that Texas has adopted a limited
duty of disclosure for escrow agents:








The
Aescrow relationship is a stakeholder
relationship that carries special duties,@ including those that are fiduciary
in nature.  Once appointed, the escrow
agent=s duties are strictly limited to
those defined by the escrow agreement.

Chapman
Children=s Trust v. Porter & Hedges, L.L.P., 32 S.W.3d 429, 438
(Tex. App.CHouston [14th Dist.] 2000, pet.
denied) (citations omitted).

The
escrow agent owes fiduciary duties to buyer and seller, but these duties are strictly
limited to its role as escrow agent.  The
scope of the agency to both parties is defined by the escrow agreement.

Equisource
Realty Corp. v. Crown Life Ins. Co., 854 S.W.2d 691, 697 (Tex. App.CDallas 1993, no writ) (citations
omitted).

However,
despite containing this language, neither of these opinions, nor any other
Texas decision we have found, has directly addressed any limitation on the
scope of an escrow or other settlement agent=s fiduciary duty of disclosure.  Nor would there be any rationale for limiting
such an agent=s fiduciary duties to only those set
forth in a written contract because: (1) fiduciary duties arise as a matter of
law,[13]
not contract;[14]
(2) they exist in special relationships in which a high degree of trust
warrants that the fiduciary=s conduct be measured by higher standards than ordinary
contractual dealings between parties[15]
and that those standards not be Awhittled down by exceptions@;[16]
and (4) contracts between fiduciaries and those to whom they owe a fiduciary
duty carry a presumption of unfairness.[17]








Lastly,
TATCO urges that subjecting escrow agents to the same duty of disclosure as
other fiduciaries would allow participants in failed real estate transactions
to shift their losses to title companies for not disclosing information
concerning the merits of the underlying transaction (such as market factors
affecting the value of property, terms at which financing could have been
obtained, and the like) that could have alerted a party to abandon the
transaction in time to avoid the loss. 
However, this contention fails to recognize that a fiduciary=s duties do not extend beyond the
scope of the fiduciary relationship.[18]  To the extent an escrow agent is employed
only to close a transaction in accordance with a contract that has already been
entered into by the parties, it is not apparent how the agent=s duty of disclosure could extend
beyond matters affecting the parties= rights in the closing process to
those concerning the merits of the underlying transaction.

In
summary, contrary to TATCO=s position, no Texas court (and particularly not the Texas
Supreme Court) has even directly addressed, let alone affirmatively adopted, a
limitation on the fiduciary duty of disclosure applicable to an escrow agent.  Although courts that have addressed this
issue in other states have varied in their approach, none of those decisions is
binding on this court; and, regardless which of their reasoning we might find
persuasive, it is not within our province as an intermediate appellate court to
select the law our State will follow. 
Accordingly, because TATCO=s motion for summary judgment did not
establish that its asserted limitation on an escrow agent=s (or other settlement agent=s) fiduciary duty of disclosure has
been adopted under Texas law, we sustain Home Loan=s challenge to that portion of the
summary judgment.








Turning
to Home Loan=s motion for summary judgment on the
fiduciary duty of disclosure, the evidence necessary to support that motion
would, at a minimum, have to prove conclusively that a disclosure of the seller=s request for payment to the mortgage
broker was material to Home Loan=s rights in the closing phase of the
transaction.  Although some of Home Loan=s summary judgment evidence was
probative of this fact question, it did not conclusively prove it.  Therefore, we cannot properly render summary
judgment in Home Loan=s favor.

                                                                Lack
of Damage

Home
Loan contends that, had TATCO advised it of the seller=s requests to divert the loan
proceeds to the mortgage broker or its principal, Home Loan could have withheld
or withdrawn approval and/or funding of the loan and thereby avoided the loss
it incurred on the loan=s default.  TATCO=s motion for summary judgment
asserted that Home Loan suffered no loss from the disbursement because Home
Loan had already funded the loan before TATCO received or complied with the
request to disburse the proceeds to Kruichak.

Home
Loan=s closing instructions to TATCO
required that: (1) a copy of the HUD-1 closing statement be faxed to Home Loan=s office before closing for review,
after which TATCO was to contact Home Loan for a funding number (signifying
Home Loan=s approval of funding in accordance
with the HUD-1); and (2) no change be made to any document without Home Loan=s approval.  Pursuant to these instructions, on December
18, 2000, TATCO faxed Home Loan a preliminary HUD-1 before closing.  Among other things, it reflected that TSMB
was to be paid a $750 loan origination fee in the closing and a $5200 mortgage
broker fee outside the closing.  The
statement further reflected that a net balance (after deducting closing costs)
of $76,837.12 was due to the seller, New Horizon Community Trust, and included
a standard printed certification, stating, ATo the best of my knowledge, the
HUD-1 Settlement Statement which I have prepared is a true and accurate account
of the funds which were received and have been or will be disbursed by the
undersigned as part of the settlement of this transaction.@ 
This certification was signed by Dawn Phillips, the branch manager and
settlement agent for TATCO.  Based on the
HUD-1 that TATCO faxed to Home Loan, Home Loan approved the funding of the
loan.  However, the record does not
reflect whether this approval occurred on December 18 or 19.








A APreliminary Disbursement Sheet@ dated December 18 reflects that the
entire amount of seller=s proceeds would be paid to Marjorie Monson (who is not
otherwise identified).  However, at some
point before TATCO disbursed the seller=s proceeds, the seller faxed TATCO a
request to issue a check for $41,450.82 of those proceeds to TSMB.[19]  After TATCO refused this request, the trustee
faxed a second request to issue a check in that amount to Jeff Kruichak, the
President of TSMB.[20]  TATCO complied with this request, except that
at Kruichak=s request, TATCO wired the funds
rather than issuing a check.  TATCO did
not advise Home Loan of the seller=s requests or this payment (the Apayment@) before making it.  An undated ADisbursement Sheet@ indicates that the loan proceeds
were received on December 19, the various closing costs were paid by check on
December 19,  $35,386.50 of the sellers
proceeds were wired to the seller=s bank on December 20, and the
remaining $41,450.02 of the seller=s proceeds were wired to Kruichak=s bank on December 22.








In
a formal escrow arrangement, the deposit of funds by Home Loan would have been
irrevocable, pending satisfaction of the conditions for disbursement.[21]  The parties= summary judgment materials did not
address whether an escrow or other settlement agent=s payment, at a seller=s request, to a third party for the
benefit of the seller is the legal equivalent of a payment to the seller, and
thus a person entitled to receive payment, such that the payment would have
complied with the conditions for disbursement. 
If such a payment did so comply, and if Home Loan=s deposit of the loan funds, and
their disbursement, was irrevocable, then Home Loan would have had no recourse
to prevent the disbursement.  Under those
circumstances, it is not apparent how Home Loan=s loss would have been caused by
TATCO=s disbursement of the funds according
to the terms Home Loan had agreed to and could not alter after it deposited the
funds.  Moreover, because the underlying
loan transaction was a sham, Home Loan would have suffered the resulting loss
on it even if TATCO had disbursed the funds to the seller expressly named in
the HUD-1.[22]

However,
because the summary judgment materials do not establish any of the foregoing
legal or factual considerations, summary could not properly be granted with
regard to TATCO=s contention of lack of damage.  Therefore, we sustain Home Loan=s challenge to that aspect of the
summary judgment.

Accordingly,
we: (1) reverse the trial court=s summary judgment on Home Loan=s claim for breach of fiduciary duty;
(2) remand that portion of the case to the trial court for further proceedings;
and (3) affirm the summary judgment as to Home Loan=s remaining claims.

 

 

 

/s/        Richard H. Edelman

Justice

 

Judgment rendered
and Substitute Opinion on Rehearing filed March 30, 2006.

Panel consists of
Justices Yates, Edelman, and Guzman.











[1]           TATCO=s motion was both a traditional and no-evidence
motion.  However, because the grounds
were legal, rather than factual or evidentiary, the difference is not material
to our disposition.





[2]           In
Pippen, as in this case, the title company was not a formal escrow
agent:

It should be noted that Rattikin
[Title Company] did not receive or hold these funds as a true escrow, although
that term has been used by the parties. 
There was no escrow agreement, and Rattikin owed no obligation to the
seller with respect to funds which were held by Rattikin while consummation of
the settlement and conveyance was being awaited.  The City simply sent its funds to Rattikin to
be used to acquire the land and to settle the claim of the selling landowners.  If these funds were misapplied, it was the
City and not the seller who was entitled to sue.

439 S.W.2d
at 664.





[3]           See
Huie v. DeShazo, 922 S.W.2d 920, 923 (Tex. 1996); Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury
ChargesCBusiness, Consumer,
Insurance, Employment PJC 104.2(e) (2003)
(Breach of Fiduciary Duty).





[4]           See
Restatement (Second) of Agency ' 14 D cmts. a-c (1958); Gurley v. Bank of
Huntsville, 349 So. 2d 43, 45 (Ala. 1977).





[5]           See
Summit Fin. Holdings, Ltd. v. Cont=l
Lawyers Title Co., 41 P.3d 548, 552
(Cal. 2002); Am. State Bank v. Adkins, 458 N.W.2d 807, 810-11 (S.D.
1990).





[6]           See
Mark Props., Inc. v. Nat=l Title Co.,
34 P.3d 587, 590-91 (Nev. 2001); Burkons v. Ticor Title Ins. Co. of Cal.,
813 P.2d 710, 718-20 (Ariz. 1991).





[7]           See
Aronoff v. Lenkin Co., 618 A.2d 669, 687 (D.C. 1992); Kitchen Krafters,
Inc. v. Eastside Bank of Mont., 789 P.2d 567, 573 (Mont. 1990), overruled
on other grounds by Busta v. Columbus Hosp. Corp., 916 P.2d 122,
134-40 (Mont. 1996).





[8]           See
Pippen, 439 S.W.2d at 665.





[9]           To
whatever extent escrow agents owe fiduciary duties to other parties to the
escrow agreement, Pippen addressed only the duties the agent owes to the
party that deposited the funds in escrow and paid its fee:

This contention overlooks the
fiduciary obligation which Rattikin [the title company] owed to the City.  Rattikin took the City's money to accomplish
a purpose directed by the City.  Rattikin
was paid a fee for its services and for the careful handling of these
funds.  Rattikin therefore owed the City
the duty of loyalty, the duty to make full disclosure, and the duty to exercise
a high degree of care to conserve the money and pay it only to those persons
entitled to receive it.

Id.





[10]          Cases
adhering to a lesser duty of disclosure do not refer to it as a duty of Afull@ disclosure.  See
supra, notes 4-7.  TATCO=s position would interpret this duty of ostensibly full
disclosure instead as essentially a duty of non-disclosure and thereby
disregard the plain meaning of the language used by the Texas Supreme Court in Pippen.





[11]          See
Pippen, 439 S.W.2d at 665 (quoting citing Kinzbach Tool Co. v.
Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509, 513-14 (1942)).

 

It is the duty of a fiduciary to deal openly, and to
make full disclosure to the party with whom he stands in such relationship. . .
.  Turner=s
position as a trusted employee of Kinzbach . . . called on him to make full
disclosure to his employer of all the facts and circumstances concerning his
dealings with Corbett.

 

Kinzbach, 138 Tex. 565, 160 S.W.2d at 513-14.





[12]          439
S.W.2d at 667.





[13]          Meyer
v. Cathey, 167 S.W.3d 327, 330-31(Tex. 2005).





[14]          Johnson
v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 203 (Tex. 2002).





[15]          See
Kinzbach, 138 Tex. 565, 160 S.W.2d at 514.





[16]          Slay
v. Burnett Trust, 143 Tex. 621, 187 S.W.2d 377, 387-88 (Tex. 1945).  However, a fiduciary=s duties may sometimes be expressly limited by
contract.  See Tex. Prop. Code Ann. ' 113.059 (Vernon 1995 & Pamphlet 2005); Sterling
Trust Co. v. Adderley, 168 S.W.3d 835, 847 (Tex. 2005).





[17]          See,
e.g., Keck, Mahin & Cate v. Nat=l
Union Fire Ins. Co., 20 S.W.3d 692,
699 (Tex. 2000).





[18]          See
Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 159-60 (Tex. 2004)
(holding that an attorney hired to review and draft sale documents for a tract
of land had no fiduciary duty to inform the client of a city council decision
pertaining to the tract because the scope of the attorney=s representation did not include representation of the
client before the city council).





[19]          This
document has a date of A12/18/00@
handwritten on it, but there is no evidence indicating what this date
signifies.





[20]          This
document bears a handwritten date of A12/21/00,@ but there is no evidence what that date signifies.





[21]          See,
e.g., Gholson v. Thompson, 298 S.W. 318, 320 (Tex. Civ. App.CEastland 1927, no writ); Blue v. Conner, 219
S.W. 533, 534 (Tex. Civ. App.CAmarillo 1920, no writ).





[22]          Because
Home Loan=s claim for breach of fiduciary duty sought only
actual and punitive damages,  and not fee
forfeiture, a lack of causation is dispositive. 
See Burrow v. Arce, 997 S.W.2d 229, 240 (Tex. 1999) (holding that
proof of actual damages is not required to obtain fee forfeiture for breach of
fiduciary duty).