270 P.2d 1086

SEARGEANT et ux.

v.

COMMERCE LOAN AND INV. CO. et al.

No. 5752.

Supreme Court of Arizona.

June 1, 1954.

Emmett R. Feighner, Phoenix, for appellants.

J. S. Riggs, Phoenix, for appellees.

PHELPS, Chief Justice.

This is an appeal from a judgment entered in favor of appellees and against appellants in the sum of $4,624.50 and from an order denying appellants' motion for a new trial.

We deem it unnecessary to relate the circumstances under which this case got into the trial court or to pass upon the preliminary questions raised relating thereto. Suffice it to say that insofar as it is material here, appellee Commerce Loan Company, a corporation, brought this action as a third-party beneficiary under an alleged contract between appellant L. H. Seargeant and one W. C. O'Brien, a secondhand

automobile dealer. It is claimed Seargeant had agreed to finance O'Brien to the extent of $10,000 on a "floor plan" arrangement for the purchase by O'Brien of ten second-hand automobiles from appellee; that Seargeant was to deposit $10,000 in the Valley National Bank to the credit of W. C. O'Brien and that said contract was made by Seargeant and O'Brien for the benefit of appellee.

The allegation of appellee relating to this contract follows:

"That on or about November 30, 1948, and in conjunction with and prior to the time this defendant and cross-complainant and the defendant, Commerce Loan & Investment Company, and the defendant, William C. O'Brien, entered into the above described purchase and sale agreement, the defendant, L. H. Seargeant, and the defendant, William C. O'Brien, entered into an agreement, the terms of which were as follows, to wit: The defendant, L. H. Seargeant, was to furnish the defendant, William C. O'Brien, with the sum of Ten Thousand Dollars ($10,000.00), in cash, for the purpose of financing the purchase of said motor vehicles described hereinabove, and the defendant, L. H. Seargeant, would deposit the said Ten Thousand Dollars ($10,000.00) in the Valley National Bank to the credit of the defendant, William C. O'Brien, as soon as this defendant and cross-complainant delivered the titles to said motor vehicles to the defendant, William C. O'Brien, for the purpose of covering the said checks which the defendant, William C. O'Brien, would give this defendant and cross-complainant in payment for the said motor vehicles hereinabove described, and as security for the repayment of said Ten Thousand Dollars ($10,000.00) the defendant, L. H. Seargeant, was to 'floor plan' said motor vehicles upon the defendant, William C. O'Brien's sales lot. That under the terms of said 'floor plan' agreement, the defendant, William C. O'Brien, was to deliver the titles to said motor vehicles which the defendant, William C. O'Brien received from this defendant and cross-complainant, and the defendant, Commerce Loan & Investment Company; that the defendant, L. H. Seargeant, would hold said titles until these cars were sold, collecting his money from the proceeds of sales as the defendant, William C. O'Brien sold said automobiles."

A "floor plan" is described by appellee's witness Benjamin as an arrangement whereby a used-car dealer who wants to buy a car and doesn't have the money to pay for it, takes his title to the car to someone who does have the money (either a finance company or an individual) who is able to put up the money and upon receipt of the money required, turns the ti-

tle to the car over to the person lending the money and usually a conditional sales contract (or a certificate of trust used by the finance company) is executed by the money lender in favor of the used-car dealer. The money lender becomes the legal owner of the car and upon resale of the car by the used-car dealer the money lender is paid the amount loaned. The title is transferred from the money lender to the new purchaser and the dealer retains the profits, if any.

Appellee alleged that Seargeant refused to deposit the $10,000 in the Valley National Bank to the credit of W. C. O'Brien as agreed and as a result thereof appellee suffered losses in the sum of $4,624.50 Seargeant denied these allegations generally and specifically. The cause was tried to the court without a jury with the result above set forth.

▮▮ Appellant Seargeant has assigned a number of errors, one of which is that the contract, being verbal, violated the statute of frauds. The case of Steward v. Sirrine, 34 Ariz. 49, 267 P. 598, clearly points out the fallacy of this position. That case holds that a promise made to a debtor (who then owes a debt or is about to incur a debt to another) to pay his debt to another is not violative of the Statute of Frauds. It is only when he makes such oral promise to the creditor that the Statute of Frauds is violated. Here whatever promise was made by Seargeant is alleged in the complaint to have been made to

O'Brien and the appellee's evidence supports that allegation. At no time did Seargeant promise appellee that he would pay it $10,000 or any sum whatsoever.

The vital question before the court therefore to be determined resolves itself into whether appellee under the terms of the agreement between Seargeant and O'Brien falls within the category of a third-party creditor beneficiary. If it does, appellee is entitled to recover. If it does not, it may not maintain this cause of action. The trial court has found that it does fall within said category and specifically finds:

"III

"At said time, November 30, 1948, the cross-defendant William C. O'Brien and the cross-defendant, L. H. Seargeant had an agreement whereunder the cross-defendant L. H. Seargeant would advance the sum of Ten Thousand Dollars ($10,000.00) and deposit same to the credit of the cross-defendant William C. O'Brien, at the Valley National Bank in Phoenix, Arizona, for the purpose of covering checks to be given by cross-defendant William C. O'Brien as payment for said ten (10) automobiles which the defendant cross-complainant, Commerce Loan Company, was offering for sale; that said agreement between cross-defendant William C. O'Brien and cross-defendant L. H. Seargeant was in effect a system of dealer financing

commonly termed 'floor planning' which had been followed by said cross-defendants in their business relationship for some time prior to said date November 30, 1948. In effect said system of 'floor planning' arrangement between said cross-defendants was as follows:

"Cross-defendant William C. O'Brien purchased used cars and displayed them for sale on his auto sales lot at Phoenix, Arizona. Cross-defendant L. H. Seargeant advanced the necessary funds for such purchases and held 'signed off' titles to said cars as security for the repayment of said purchase funds plus cross-defendant L. H. Seargeant's compensation for advancing of said funds; that when cross-defendant William C. O'Brien sold any of said cars, cross-defendant L. H. Seargeant would deliver the title to William C. O'Brien's purchaser, and collect the funds due him on the advances made for the purchase of said car."

Do the facts as found by the trial court create a third-party beneficiary contract? In other words, do the facts found create a promise on the part of Seargeant to pay the Commerce Loan Company the sum of $10,000? If they do, the judgment of the trial court must be affirmed. If not, it must be reversed. It is not enough that the Loan Company may be incidentally benefitted by the contract between Seargeant and O'Brien. There must be manifested in the language of the contract an intent on the part of Seargeant to assume and discharge O'Brien's obligation to the Loan Company. The promise of Seargeant to O'Brien must in effect be to pay to the Loan Company the $10,000 in order for the agreement to entitle the Loan Company to maintain a cause of action against Seargeant upon a third-party beneficiary contract. In legal effect the agreement must be such as to bind Seargeant to discharge O'Brien's obligation to the Loan Company.

The finding of the court is that O'Brien and Seargeant

"* * * had an agreement whereunder the cross-defendant L. H. Seargeant would advance the sum of Ten Thousand Dollars ($10,000.00) and deposit same to the credit of the cross-defendant, William C. O'Brien, at the Valley National Bank in Phoenix, Arizona, for the purpose of covering checks to be given by cross-defendant William C. O'Brien as payment for said ten (10) automobiles which the defendant cross-complainant, Commerce Loan Company was offering for sale; * * *".

If we attribute to the language of the court above quoted the most favorable interpretation of which it is susceptible in support of its judgment, we cannot possibly find in it a promise by Seargeant to pay

the Loan Company one dollar. Nor can we find in the language used by the court any intention that Seargeant assumed the obligation of O'Brien to the Loan Company. The most that can be gleaned from it is that Seargeant agreed to deposit $10,000 in the Valley National Bank to the credit of O'Brien with which O'Brien could pay the Loan Company. Under the terms of the agreement as found by the court O'Brien could have used the money for any purpose he might have chosen regardless of his agreement with Seargeant or his agreement with the Loan Company. In short, under the finding of the court Seargeant would have lost all control over the $10,000 the minute he deposited it with the bank. O'Brien did give the Loan Company his checks to cover the full amount of $10,000. Both O'Brien and the Loan Company understood that O'Brien, not Seargeant, was to pay the Loan Company. If Seargeant agreed to advance the money to O'Brien to pay for the cars and failed to do so, O'Brien alone had a cause of action against him. The Commerce Loan Company is at the most an incidental beneficiary under the agreement as found by the court.

■ This question arose in the case of Pennsylvania Steel Co. v. New York City Ry. Co., 2 Cir., 198 F. 721. After stating the different theories upon which third-party beneficiary actions are maintained, the court said in 198 F. at page 749:

"* * * But whatever may be the correct theory, one thing is essential to the right and that is that the third person be the real promisee—that the promise be made to him in fact although not in form. It is not enough that the contract may operate to his benefit. It must appear that the parties intend to recognize him as the primary party in interest and as privy to the promise."

■ In Restatement of the Law of Contracts, page 151, section 133, in illustrating the circumstances under which a third-party beneficiary may recover the following illustration is used:

"5. A conveys Blackacre to B in consideration of B's promise to pay $15,000.00 as follows: $5000.00 to C, A's wife, on whom A wishes to make a settlement, $5000.00 to D to whom A is indebted in that amount, and $5,000.00 to E, a life insurance company, to purchase an annuity payable to A during his life. C is a donee beneficiary; D is a creditor beneficiary; and E is an incidental beneficiary."

* * * * * *

"9. B promises A for sufficient consideration to pay whatever debts A may incur in a certain undertaking. A incurs in the undertaking debts to C, D and E. If, on a fair interpretation of B's promise, the amount of the

debts is to be paid by B to C, D and E, they are creditor beneficiaries; if the money is to be paid to A in order that he may be provided with money to pay C, D and E, they are at most incidental beneficiaries."

The latter illustration is identical with the situation in this case.

We have had this question before us in two cases, the first being Steward v. Sirrine, supra, and in Treadway v. Western Cotton Oil & Ginning Co., 40 Ariz. 125, 10 P.2d 371. In the one case the third party was allowed to recover and in the other, recovery was denied. The court drew a distinction between cases where recovery may be had and where it could not.

Justice dictates that if Seargeant breached his contract with O'Brien, he should have been required to respond in damages or if he obtained possession of four of the cars from the Loan Company without paying it therefor, that it should be compensated. But unfortunately the remedy selected in this case cannot possibly reach either situation.

For the reasons above stated, judgment of the trial court is reversed with directions to enter judgment for appellant.

STANFORD, LA PRADE, UDALL and WINDES, JJ., concur.