957 P.2d 1004

**In re CHRISTOPHER R.**

**No. 1 CA–CV 96–0216.**

Court of Appeals of Arizona,
Division 1, Department C.

July 15, 1997.

462

and the guests began breaking windows, damaging the walls and damaging other items in the house. Although the Juvenile was present and heard the destruction taking place, he told the police that he had not actually seen it committed, and he did not call the police to stop any further damage.

The State charged the Juvenile with delinquency for facilitating criminal damage and for trespass. After finding that he had committed both offenses, the court adjudicated him delinquent. The court placed him on probation and left open the possibility of restitution if the State received a verified statement of damage from the victim.

## THE EVIDENCE DOES NOT SUPPORT AN ADJUDICATION BASED ON FACILITATION

■ We agree with the Juvenile that the evidence is insufficient to support a finding, beyond a reasonable doubt, that he facilitated criminal damage. A person commits facilitation when:

acting with knowledge that another person is committing or intends to commit an offense, such person knowingly provides such other person with means or opportunity for the commission of the offense and which in fact aids such person to commit the offense.

Ariz.Rev.Stat.Ann. (A.R.S.) § 13–1004(A) (1989).

The State · argues that his extension of invitations to the party and his knowledge that damage was occurring provided these other persons with the means or opportunity for committing criminal damage and aided them in committing the damage. The problem with this theory is that there is no evidence that, at the time the Juvenile made the house available to the partygoers, he knew they would damage it.

■ The State anticipates this problem by arguing that the Juvenile "had to have known that inviting thirty or forty kids to a party in a vacant house would result in the house being 'trashed.'" While a reasonable person might suspect that such a teenage party would result in damage, the Juvenile is

Richard M. Romley, Maricopa County Attorney by Linda Alauria, Deputy County Attorney, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by David Katz, Deputy Public Defender, Phoenix, for Appellant Juvenile.

## OPINION

KLEINSCHMIDT, Judge.

This case arises out of damage to a house. The Juvenile's grandmother had leased the house as a residence for herself and the Juvenile. The house was never occupied under the lease, however, because the grandmother died before the term began. Shortly after her death, the Juvenile invited a group of friends to a party at the house. As many as thirty or forty young people showed up,

not charged with negligent or reckless behavior. He is charged with knowingly facilitating a crime. One acts knowingly when "with respect to conduct or to a circumstance . . . [the individual] is aware or believes that his or her conduct is of that nature or that the circumstance exists." A.R.S. § 13–105(9)(b) (Supp.1996). It is reasonably possible, on this record, that the Juvenile was neither aware nor believed that the party would result in the damage that occurred.

The State has another and better argument. It points out that the damage was so extensive that it took some time to accomplish. At the very least, the State says, the Juvenile knew it was occurring and did nothing to stop it. This, the State argues, amounts to facilitation. Other than his failure to call the police, the record is silent about what the Juvenile did or did not do to stop the damage. The State's argument assumes that the Juvenile had a duty to stop the damage, that he could have done something to stop it, but that he did nothing. Even if we assume the existence of a duty, the State's argument is flawed because it rests on speculation about facts as to which it, the State, has the burden of proof. For all the record shows, the Juvenile might have made a desperate effort to rein in his riotous guests. For all we know, he may have prevented more extensive damage than actually occurred. But whether he did or not, for all the record shows, it is possible that by the time the Juvenile was aware that damage was occurring, the situation had passed the point at which the Juvenile could control it. Proof beyond a reasonable doubt requires more than the State was able to show.

Our conclusion moots some other issues raised in the Juvenile's brief. Counsel for the Juvenile objected to much of the testimony relating to the amount of damage done to the house. The State was attempting to prove the amount of damage because the class of the crime, facilitation of criminal damage, depends upon the cost of the damage. See A.R.S. §§ 13–1004(B) and –1602(B) (1989). Our conclusion that the evidence will not support a finding of facilitation makes it unnecessary to address these evidentiary issues.

## THE EVIDENCE SUPPORTS AN ADJUDICATION BASED ON TRESPASS

■ A person commits first-degree trespass by knowingly "[e]ntering or remaining unlawfully in or on a residential structure." A.R.S. § 13–1504(A)(1) (1989). The Juvenile has several arguments as to why the evidence will not support the conclusion that he trespassed on the property. He points out that his grandmother leased the house for a term from October 30, 1995, through April 30, 1996, and that the lease named him as one of the persons permitted to reside there. It follows, he says, that he was entitled to use the house for a party.

The lease provided that the house was to be used only for residential purposes for the grandmother, the Juvenile, and for one other person. There was no evidence that the Juvenile ever actually resided in the house because his grandmother, to whom it had been leased, died before the effective date of the lease. Moreover, the Juvenile admitted to the police that he knew he was not supposed to be in the house.

The succession of the grandmother's estate to the interest in the lease does not help the Juvenile. He was too young to be the personal representative of the estate, and there was nothing to suggest that he had permission from a personal representative to have a party in the house.

■ The Juvenile claims that he had the right to have a party at the house because he was a third-party beneficiary of the lease. A third party may enforce a contract if the contracting parties intended to both confer a direct benefit on the third party and recognize him as the primary party in interest. *Araiza v. U.S. West Bus. Resources, Inc.,* 183 Ariz. 448, 454, 904 P.2d 1272, 1278 (App. 1995). The fact that the Juvenile was listed as a person who could use the house for residential purposes does not mean that he was the primary party in interest. Surely neither of the parties to the contract intended the lease to allow the Juvenile to hold an unsupervised party in an empty house.

**464**

Again, our conclusion moots other issues the Juvenile raises. The property manager testified about the interpretation of the lease. The Juvenile contends that the evidence was incompetent and its admission violated the parole evidence rule. We need not analyze his argument in detail because, even if all the disputed testimony is stricken, the state of the record permits no conclusion other than that the Juvenile was a trespasser. This conclusion also moots the Juvenile's complaint that the court curtailed objections to the prosecutor's improper statements.

The adjudication of delinquency is affirmed on the grounds of trespass only, and the finding that the Juvenile committed facilitating criminal damage is vacated.

GERBER, P.J., and SULT, J., concur.