38 P.3d 1229

**Laura SHERMAN, Plaintiff/Appellant,**

v.

**FIRST AMERICAN TITLE INSURANCE COMPANY, an Arizona corporation; and Fidelity National Title Agency, Inc., an Arizona corporation, Defendants/Appellees.**

No. 2 CA–CV 99–0128.

Court of Appeals of Arizona. Division Two, Department B.

Jan. 22, 2002.

Gabroy, Rollman & Bossé, P.C., By John Gabroy, Tucson, for Plaintiff/Appellant.

Carmine Cornelio, Tucson, for Defendants/Appellees.

## OPINION

DRUKE, J.

¶ 1 Appellant Laura Sherman was the real estate salesperson on five residential transactions while employed by All Pros LLC, dba Re/Max All Pros ("All Pros"). Its broker and owner, Sue Gutierrez, had originally instructed First American Title, Inc., and Fidelity National Title Agency, Inc., the escrow agents for the transactions, to make the commission checks payable to Sherman, a practice the title companies had followed in the past. But, after Sherman left All Pros, the broker amended the instructions and directed the title companies to make the commission checks payable to All Pros, which both title companies did without Sherman's consent. When Sherman did not receive any commissions on the transactions, she sued the broker and her husband, All Pros, and the title companies. Sherman now appeals the trial court's granting of summary judgment in favor of the title companies on her breach of contract claims.[1]

¶ 2 A trial court may grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c), 16 A. R.S., Pt. 2. We view the facts and reasonable inferences from those facts in the light most favorable to the party opposing summary judgment. *Ruelas v. Staff Builders Personnel Services, Inc.*, 199 Ariz. 344, 18 P.3d 138 (App.2001).

And we review de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Id.*

### Third–Party Beneficiary

¶ 3 Relying on *Maganas v. Northroup*, 135 Ariz. 573, 663 P.2d 565 (1983), Sherman argues that she was a third-party beneficiary of the broker's original instructions to the title companies and, thus, the broker could not amend those instructions without her consent. Also relying on *Maganas*, the title companies assert that Sherman's argument ignores the supreme court's holding that the title company there "was not obligated to obtain [Maganas's] consent to the amended instructions, since the amendment was submitted and executed by his own agent." *Id.* at 577, 663 P.2d at 569. Because the trial court granted summary judgment on this basis and because both parties rely on *Maganas*, we set forth the facts there to determine its applicability here.

¶ 4 Thomas Maganas was a California real estate agent who had secured a purchaser for a property listed with two Arizona real estate brokers, Porter and Edith Northroup. The escrow instructions submitted to the title company were signed by Edith, on her own behalf and as agent for Maganas and his California broker, D.C. McCredie. The instructions provided, in relevant part, that Edith " 'on behalf of herself, D.C. McCredie and Thomas McGanis (sic) has agreed to accept the sum of $62,500.00 as and for payment in full for all fees and commissions.' " *Id.* at 575, 663 P.2d at 567. Later, without Maganas's consent, Edith, with McCredie's approval, submitted amended instructions to the title company and, based on those instructions, the title company disbursed part of the commissions to the brokers but not to Maganas.

¶ 5 In his subsequent lawsuit, Maganas claimed he was a third-party beneficiary of the escrow instructions and, thus, they could not be amended without his consent. In addressing this issue, the supreme court first observed that whether a third party "is

---

1. Although Sherman's claims against the other defendants were apparently pending when she appealed, the judgment from which she appeals includes the finality language required by Rule 54(b), Ariz. R. Civ. P., 16 A.R.S., Pt. 2.

merely an incidental beneficiary [of a contract], or one for whose express benefit the contract was entered into ... is a question of law for the court." *Id.* (citation omitted). *See also Araiza v. U.S. West Bus. Resources,* 183 Ariz. 448, 904 P.2d 1272 (App.1995) (construction of contract is question of law). The court then examined the escrow agreement and, from it, concluded that Maganas was a third-party beneficiary.

> On its face the contract indicates the parties' intent to recognize [Maganas] as a direct beneficiary of the escrow agreement.... [T]he escrow instructions specifically named [Maganas] as one entitled to share in the commission of $62,500. It provided that Edith Northroup, the Arizona broker, would accept disbursement of the commission individually and as agent for Maganas and McCredie. The contract manifests the parties' intent to confer a direct benefit on Maganas.

*Maganas,* 135 Ariz. at 576, 663 P.2d at 568. The court thus agreed with Maganas that, as a third-party beneficiary of the escrow agreement, he was "entitled to maintain an action" on the agreement and implied that the escrow instructions could not be changed "without his consent." [2] *Id.* The court found, however, that Maganas had "appointed Edith Northroup as his agent" and, therefore, the title company "was not obligated to obtain [his] consent to the amended instructions, since the amendment was submitted and executed by his own agent." *Id.* at 576–77, 663 P.2d at 568–69.

■■■ ¶ 6 Sherman contends the original instructions here likewise manifest the parties' intent to make her a third-party benefi-

ciary.[3] Upon examining those instructions and the relevant law on third-party beneficiaries, we disagree. For a person to recover as a third-party beneficiary in Arizona, the contracting parties must intend to directly benefit that person and must indicate that intention in the contract itself. *Norton v. First Fed. Sav.,* 128 Ariz. 176, 624 P.2d 854 (1981); *Irwin v. Murphey,* 81 Ariz. 148, 302 P.2d 534 (1956). In addition,

> the third person must be the real promisee. The promise must be made to him in fact ... and it is not enough that the contract may operate to his benefit but it must appear that the parties intended to recognize him as the *primary* party in interest and as privy to the promise.

*Basurto v. Utah Constr. & Mining Co.,* 15 Ariz.App. 35, 39, 485 P.2d 859, 863 (1971) (footnote omitted). *See also Irwin* (parties must intend third party as primary party in interest); *In re Christopher R.,* 191 Ariz. 461, 957 P.2d 1004 (App.1997) (same).

¶ 7 In this case, it does not appear that the broker and the title companies intended Sherman to be the primary party in interest of the original instructions. In relevant part, those instructions were identical and directed the title companies "to pay [Sherman all of the] real estate brokers commission ... due at the close of ... escrow." Although arguably similar to the instructions in *Maganas,* the instructions here further provided:

> All commission checks detailed above, both RE/MAX All Pros and Sales Associate(s), are to be delivered by runner/messenger service to [All Pros' address] to the attention of Administration. The only individual authorized to pick up any checks at the

---

2. Although the *Maganas* court suggested that the escrow agreement there could not be amended without the third-party beneficiary's consent, the general rule appears to be otherwise. *See In re Estate of Levine,* 145 Ariz. 185, 700 P.2d 883 (App.1985) (decedent and second wife could later modify prenuptial agreement without decedent children's assent because agreement contained no provision prohibiting it); Restatement (Second) of Contracts § 311 (1981) (absent term prohibiting it, parties to contract intended to benefit third party retain power to subsequently modify it).

3. Although the title companies do not challenge this contention on appeal, we review de novo

both the legal issues concerning contract interpretation, *Maganas,* and the granting of summary judgment. *See Ruelas.* Moreover, we are not precluded from reviewing an issue "the parties have failed to address completely." *Decola v. Freyer,* 198 Ariz. 28, ¶ 8, 6 P.3d 333, ¶ 8 (App.2000). Indeed, even had the parties stipulated to Sherman's third-party beneficiary status, we would not be bound by it. " 'Parties cannot stipulate as to the law applicable to a given state of facts and bind the court.' " *Word v. Motorola, Inc.,* 135 Ariz. 517, 520, 662 P.2d 1024, 1027 (1983), *quoting State Consol. Publ'g Co. v. Hill,* 39 Ariz. 163, 167, 4 P.2d 668, 669 (1931).

title company is Sue Gutierrez, Broker/Owner. SALES ASSOCIATES ARE NOT AUTHORIZED TO PICK UP CHECKS OR HAVE THEIR CHECKS DELIVERED TO THEM INDIVIDUALLY.

In sum, this provision expressly restricted delivery of the commission checks to the broker and prohibited their direct delivery to Sherman. The restrictive provision not only conformed to but was required by the relevant Arizona statutes governing real estate commissions.

¶ 8 Under Arizona law, only a real estate broker, not a salesperson, may directly earn a commission from a real estate transaction. *See* A.R.S. § 32–2101(46) (defining "[r]eal estate broker" as "a person, other than a salesperson, who, for another and for compensation," engages in various real estate transactions). In fact, four of the real estate purchase contracts in this case reflect this limitation, stating: "Seller and Buyer acknowledge that Broker(s) shall be compensated for services rendered ...." And, under A.R.S. § 32–2155(A), a real estate salesperson may accept compensation "only from the legally licensed broker to whom the licensee is licensed." *See In re Kun,* 868 F.2d 1069, 1071 (9th Cir.1989) ("Section 32–2155 flatly prohibits real estate salesmen from accepting commissions from anyone but brokers; it contains no exceptions.") *See also* A.R.S. § 32–2153(A)(7) (allowing suspension or revocation of salesperson's license for accepting compensation "from any person other than the licensed broker to whom the licensee is licensed.").

¶ 9 The restrictive provision also reflects the employer-employee relationship that exists between a real estate broker and the broker's salespersons. The existence of this relationship was first recognized by our supreme court in *McClain v. Church,* 72 Ariz. 354, 236 P.2d 44 (1951). There, a real estate broker had not paid unemployment taxes on commissions earned by his salespersons, arguing that they were independent contractors and not performing services for wages. The supreme court rejected this argument, finding that the salespersons "were employees of the real estate broker under whom

they were licensed to operate." *Id.* at 359, 236 P.2d at 48. The court reasoned:

> The legal right to collect the commission on sales made by the salesmen was in the [broker] and not in the salesmen. The salesmen were bound to look to the [broker] for their proportionate part of the commissions. The [broker] was under obligation to pay the commissions to the salesmen. These commissions were necessarily paid for services rendered. The salesmen therefore were ... performing services for "wages" which term includes commissions, for the [broker].

*Id.* The court reaffirmed this employer-employee relationship in *Hughes v. Industrial Commission,* 113 Ariz. 517, 558 P.2d 11 (1976). Again, the court rejected the argument that the broker's salespersons were independent contractors, finding that Arizona's real estate statutes are "replete with references to the brokers and salesmen as employer and employee" and give "the broker control of the salesmen, ... which is hardly the role of the independent contractor." *Id.* at 519, 558 P.2d at 13.

¶ 10 *McClain, Hughes,* and our real estate statutes thus make clear that Sherman was the broker's employee and had to receive her commissions from the broker, as the restrictive provision implicitly provides. In contrast, the escrow instructions in *Maganas* did not require a restrictive provision similar to the one here because Maganas was not employed by the Arizona brokers—he was employed by the California broker.

¶ 11 Moreover, in our view, the restrictive provision made clear that Sherman was an incidental beneficiary of the instructions because the provision precluded the title companies from paying commissions directly to her. In this respect, we find instructive the case of *Seargeant v. Commerce Loan & Investment Co.,* 77 Ariz. 299, 270 P.2d 1086 (1954), which involved a used car dealer, O'Brien, who planned to purchase ten cars from Commerce Loan for resale. In conjunction with the purchase, O'Brien arranged to borrow $10, 000 from Seargeant under a "floor plan" agreement. It provided that Seargeant would deposit the money in O'Brien's bank account to cover the checks

O'Brien would write to purchase the cars, Seargeant would then receive the titles to the cars O'Brien had purchased and, upon their resale, Seargeant would receive his share of the proceeds and transfer the title to the purchaser. When Seargeant refused to deposit the $10,000 into O'Brien's account, Commerce Loan alleged it had lost over $4,000 and sued Seargeant, claiming it was a third-party beneficiary of the "floor plan" agreement.

¶ 12 The supreme court agreed that Commerce Loan would be a third-party beneficiary of the agreement if it "manifested . . . an intent on the part of Seargeant to assume and discharge O'Brien's obligation to [Commerce Loan]." *Id.* at 303, 270 P.2d at 1089. But the court found nothing in the agreement reflected such intent.

> The most that can be gleaned from [the agreement] is that Seargeant agreed to deposit $10,000 in the [bank] to the credit of O'Brien with which O'Brien could pay [Commerce Loan]. . . . In short, . . . Seargeant would have lost all control over the $10,000 the minute he deposited it with the bank.

*Id.* at 304, 270 P.2d at 1089. The court also observed that "[b]oth O'Brien and [Commerce Loan] understood that O'Brien, not Seargeant, was to pay [Commerce Loan]" and concluded that it was "at the most an incidental beneficiary under the agreement." *Id. See also Norton* (subdivision lot owners incidental beneficiaries of performance bond even though they had obvious interest in completion of subdivision's off-site improvements; primary purpose of performance bond was to protect city's interest in assuring completion of improvements); *Irwin*, 81 Ariz. at 153, 302 P.2d at 537 (persons furnishing work, labor, or materials for construction of residence were not third-party beneficiaries of a construction loan containing no express statements that such persons were "to directly benefit from it or that [the lender] intended to be bound to anyone other than [the borrower]."). *But see Tanner Cos. v. Ins. Mktg. Serv., Inc.,* 154 Ariz. 442, 447, 743 P.2d 951, 956 (App.1987) (subcontractor was third-party beneficiary of performance bond because "[t]he practical effect of the bond and [county] ordinance was to guarantee payment to [subcontractor] after improvements had been accepted by [county].").

¶ 13 For the same reasons expressed in *Seargeant,* we conclude that Sherman was merely an incidental beneficiary of the original instructions. Had the title companies prepared the commission checks in Sherman's name and delivered them to the broker, as originally instructed, the title companies would have lost all control over the checks once they were delivered to the broker, as the instructions required. In addition, we find nothing in the original instructions stating or suggesting that the title companies promised to pay Sherman's commissions or assumed the broker's obligation to do so. Indeed, based on § 32–2155(A), *Hughes,* and *McClain,* Sherman could not look to the title companies for payment. Thus, in light of the restrictive provision and relevant Arizona law, it does not definitely appear that the broker and title companies intended to recognize Sherman as the primary party in interest of the original instructions. *See Irwin.* Although she benefited from those instructions, they did not "both intentional[ly] and direct[ly]" benefit her. *Norton,* 128 Ariz. at 178, 624 P.2d at 856. Accordingly, we conclude that Sherman was not a third-party beneficiary of the original instructions, and, thus, the broker and title companies could later modify those instructions without Sherman's consent.

### Assignment

¶ 14 Relying on *In re Kun* and *Bustrum v. Gardner,* 154 Ariz. 409, 743 P.2d 5 (App.1987), Sherman nonetheless argues that the original escrow instructions constituted assignments of the broker's commissions to her or that those instructions created "a genuine issue of material fact on that question." Although *In re Kun* and *Bustrum* recognize that a broker's right to a commission is assignable, neither the record before us nor the law supports Sherman's arguments.

¶ 15 First, Sherman's complaint fails to allege that the original instructions amounted to an assignment of the broker's commissions; it only alleges that they made her a

third-party beneficiary. Moreover, even if Sherman had alleged she was an assignee, her cause of action would lie not against the title companies but rather against those obligated under the sales contracts to pay the broker's commissions. *See Bustrum* (assignee stands in broker's position and may bring action to recover commission from principal); *In re Kun* (same).

¶ 16 Next, the instructions themselves do not contain the words "assign" or "assignment" but merely direct the title companies, as noted above, "to pay [Sherman all of the] real estate brokers commission ... due at the close of ... escrow." We find this language similar to that found in the following illustration in the Restatement (Second) of Contracts § 325 cmt. a, illus. 3 (1981): "A writes to B, 'Please pay to C the balance due me.'" The Restatement says this language "is insufficient to establish an assignment or to give B notice of an assignment." *Id.*

■ ¶ 17 And finally, the record contains no affidavits, deposition testimony, or other evidence that the original instructions were intended to assign the broker's commissions to Sherman. As Sherman herself points out, quoting from *Certified Collectors, Inc. v. Lesnick*, 116 Ariz. 601, 603, 570 P.2d 769, 771 (1977): "It is ... hornbook law that in order to effect a legal assignment of any kind there must be evidence of an intent to assign or transfer the whole or part of some specific thing, debt, or chose in action ...." Indeed, we believe the restrictive provision in the original instructions reflects a contrary intent.

¶ 18 For the foregoing reasons, we reject Sherman's argument that the original instructions assigned the broker's commissions to her or that the record creates a genuine issue of material fact on the issue and precludes summary judgment.

### Estoppel

■ ¶ 19 Sherman further argues that the title companies are equitably estopped from contending that § 32–2155 bars her claim. However, equitable estoppel not only requires that a person show he or she relied upon another's conduct but that, as a result

of such reliance, the person changed his or her "position for the worse." *Heltzel v. Mecham Pontiac*, 152 Ariz. 58, 60, 730 P.2d 235, 237 (1986). Although Sherman asserted below in her opposition to the motion for summary judgment and now reasserts on appeal that she relied on the title companies' practice of making commission checks payable to salespersons, the record contains no evidence, by affidavit or otherwise, supporting that assertion or that, as a result of her reliance on the practice, she changed her "position for the worse." *Id.*

### Request to Amend Complaint

■ ¶ 20 Finally, Sherman contends the trial court erred in granting summary judgment "in the face of [her] request to amend the complaint to assert a negligence claim against [the title companies]" and her "argument that she should be permitted ... to take discovery [on] ... whether [the title companies] had the duty to disclose the existence of fraud." In support of her contention, she relies on the supreme court's recognition in *Maganas* that an escrow agent owes two distinct duties to the parties. "The first is ... to act in strict accordance with the terms of the escrow agreement," and "[t]he second [is] ... to disclose known fraud." 135 Ariz. at 576, 663 P.2d at 568. *See also Burkons v. Ticor Title Ins. Co. of Cal.*, 168 Ariz. 345, 355, 813 P.2d 710, 720 (1991) ("[I]f the *facts actually known* to the escrow agent present substantial evidence of fraud, there is a duty to disclose [to the parties]."). But, because we have decided that Sherman was neither a third-party beneficiary nor an assignee of the original instructions, she was not a party to the escrow and, therefore, the title companies did not owe her a duty to strictly comply with those instructions or disclose any evidence of fraud and, thus, they could not have breached any duty to her. *See Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 706 P.2d 364 (1985) (plaintiff may maintain negligence action only if defendant owes duty to plaintiff); *Meineke v. GAB Bus. Serv., Inc.*, 195 Ariz. 564, 991 P.2d 267 (App. 1999) (in negligence action, plaintiff must demonstrate that defendant breached duty owed to plaintiff). Therefore, the trial court did not abuse its discretion in not allowing

Sherman either to amend her complaint to allege the title companies' negligence or to conduct discovery in that regard when to do so would have been futile. *See Walls v. Arizona Dep't of Pub. Safety*, 170 Ariz. 591, 826 P.2d 1217 (App.1991) (no abuse of discretion in denying motion to amend where amendment would have been futile); *In re Estate of Torstenson*, 125 Ariz. 373, 609 P.2d 1073 (App.1980) (court should freely grant amendment absent such reasons as undue delay, bad faith, or futility of amendment).

## Conclusion

¶ 21 We thus affirm the trial court's granting of summary judgment against Sherman, although we do so on different grounds. *See Chandler Med. Bldg. Partners v. Chandler Dental Group*, 175 Ariz. 273, 855 P.2d 787 (App.1993) (appellate court may affirm trial court if it reaches right result). And, in our discretion, we grant the title companies' request for attorney's fees on appeal, made pursuant to A.R.S. § 12–341.01, upon their compliance with Rule 21(c), Ariz. R. Civ.App. P., 17B A.R.S.

FLÓREZ and PELANDER, JJ., concurring.