Paul ARMBRUSTER, Plaintiff,

v.

WAGEWORKS, INC., et al., Defendants.

No. CV–12–02058–PHX–ROS.

United States District Court, D. Arizona.

June 10, 2013.

Paul Armbruster, Phoenix, AZ, pro se.

James Patrick Baker, Baker & McKenzie LLP, San Francisco, CA, for Defendants.

## ORDER

ROSLYN O. SILVER, Chief Judge.

Plaintiff Paul Armbruster ("Armbruster") has sued various individuals and entities for events largely arising out of the forfeiture of stock options granted to his ex-wife during her employment by Defendant WageWorks, Inc. ("WageWorks"). All the defendants have moved to dismiss Plaintiff's claims. The complaint will be dismissed and Armbruster will be given *one* opportunity to amend.

## BACKGROUND

Armbruster married Lauren Coppock ("Coppock") in 1999. At some point after the marriage, Coppock accepted a position with WageWorks. During that employment, Coppock was awarded stock options under the "WageWorks 2000 Stock Option/Stock Issuance Plan" ("Stock Options Plan"). (Doc. 1 at 7). The complaint cites extensively from the Stock Options Plan and the parties seem to agree that the Court can consider the terms of the Stock Options Plan when resolving the motion to dismiss.[1]

---

1. "A court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006) (quotation omitted).

According to the Stock Options Plan, the options granted to Coppock were "exercisable only by [Coppock] during ... her lifetime" except the options could be "assigned in whole or in part ... to [Coppock's] former spouse, to the extent such assignment is ... pursuant to a domestic relations order." (Doc 12–1 at 8). Coppock was granted approximately 50,000 [2] options during her employment.

In April 2011, Armbruster and Coppock divorced. In connection with their divorce, they entered into a "Property Settlement Agreement" ("Divorce Agreement"). The Divorce Agreement explicitly addressed Coppock's stock options and stated they would be "divided equally between the parties." The Divorce Agreement stated Coppock was required to "exercise [Armbruster's] portion of the options if, as, and when directed in writing by [Armbruster] (or his designee)." If directed by Armbruster to exercise the options, Coppock was required to "deliver to [Armbruster] good and marketable title to the resulting shares or proceeds received from such exercise promptly upon receipt by her." For his part, Armbruster was required to "provide the funds necessary to exercise the options [awarded] to [Coppock] 90 days prior to the exercise date." If Armbruster did not do so, he would "forfeit his shares."

After the divorce, Coppock continued to work for WageWorks. Apparently while Coppock was still employed, Armbruster "sought to have [WageWorks] confirm his 'sole and separate' title to" half of Coppock's options. (Doc. 1 at 9). WageWorks was unwilling to provide such confirmation. On February 29, 2012, WageWorks termi-nated Coppock. (Doc. 1 at 9). In exchange for receiving severance pay, Coppock executed a "full release and waiver." (Doc. 1 at 3). Pursuant to the terms of the Stock Options Plan, Coppock's termination meant her unexercised options would automatically be forfeited three months after her termination date. (Doc. 12–1 at 7). Because neither Coppock nor Armbruster had sufficient funds to exercise a majority of the options, most of the options were forfeited.

After Coppock's options were forfeited, Armbruster had some interactions with WageWorks regarding the forfeiture.[3] Armbruster and WageWorks were unable to reach an agreement regarding the options. Eventually Armbruster elected to sue WageWorks as well as Camden Partners Holdings, LLC ("Camden"); VantagePoint Capital ("VantagePoint"); JDN Corporate Advisory LLC ("JDN"); Joseph L. Jackson; and Edgar O. Montes. Camden, VantagePoint, and JDN hold seats on WageWorks' Board of Directors. Jackson and Montes are senior executives at WageWorks.

It is difficult to determine the precise basis for Armbruster's complaint. In general, Armbruster believes Defendants engaged in "an illegal and fraudulent scheme ... to defraud Plaintiff of WageWorks stock." (Doc. 1 at 3). This scheme allegedly consisted of Defendants conspiring to fire Coppock at a time when neither Coppock nor Armbruster had the financial resources to exercise the options so the options were forfeited. This lawsuit is an attempt to recoup the forfeited options.

**2.** The parties often use different numbers when referring to the total number of options granted to Coppock. (Compare Doc. 1 at 3 with Doc. 12 at 8). The precise number, however, is not relevant at this time.

**3.** Defendants have attached documents explaining the parties' interactions before this lawsuit. As those interactions are not detailed in the complaint, the Court will not consider them.

## ANALYSIS

### I. Standard for Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true" and viewed in the light most favorable to the nonmoving party, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *Moss v. United States Secret Service,* 675 F.3d 1213, 1228 (9th Cir.2012). Under this standard, the well-pled facts must support a "cognizable legal theory." *UMG Recordings, Inc. v. Shelter Capital Partners LLC,* 667 F.3d 1022, 1029 (9th Cir.2011). And those facts must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. In drawing such an inference, the Court must engage in a "context-specific" analysis of the alleged facts and rely on "its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

### II. Armbruster Has Not Stated Any Plausible Claims

Armbruster's complaint is perplexing because the majority of his allegations seem to be based on WageWorks' allegedly wrongful termination of Coppock but Coppock has not sued. Moreover, while the complaint alleges Defendants engaged in a scheme to take advantage of Armbruster's financial situation, there is no indication that Defendants caused that financial situation. Nor is there any indication that Defendants actually interfered with Armbruster instructing Coppock to exercise options. Thus, while Armbruster is upset about the forfeiture of options, the Court cannot determine the precise reasons he believes Defendants should be held liable for that forfeiture. In any event, and as set forth below, all of the presently pled claims suffer from clear legal flaws and must be dismissed.

### A. Breach of Contract, Intentional Interference, Breach of Good Faith, and Breach of Fiduciary Duty

■ Armbruster has asserted various contract-based claims. The problem with all of these claims is that the complaint does not sufficiently allege that Armbruster had any contract with Defendants. As best as the Court can determine, Armbruster believes his Divorce Agreement with Coppock made him a party to the Stock Options Plan. That is, Armbruster claims the Stock Options Plan allowed Coppock to assign some of her options to a former spouse and the Divorce Agreement constituted such an assignment. Therefore, Armbruster claims he became a party to the Stock Options Plan and is entitled to sue Defendants for breaching the Stock Options Plan. Armbruster is correct that the Stock Options Plan allowed assignments but the plain language of the Divorce Agreement establishes no assignment occurred. Accordingly, all of Armbruster's contract-based claims fail.

■ The starting point for the contract claims is the law governing assignments. Under Arizona law, "to effect a legal assignment of any kind there must be evidence of an intent to assign or transfer the whole or part of some specific thing." *Certified Collectors, Inc. v. Lesnick,* 116 Ariz. 601, 570 P.2d 769, 771 (1977). The Divorce Agreement does not contain evidence of such an intent. Instead, it sets forth that Coppock retained ownership of the options. In particular, the Divorce Agreement stated Coppock would have to "exercise [Armbruster's] portion of the options" and, if directed to do so, Coppock

would have to "deliver to [Armbruster] good and marketable title to the resulting shares or proceeds received from such exercise promptly upon receipt by her." The fact that Coppock would have to exercise the options, and then deliver title to Armbruster, shows that the options were not assigned to Armbruster nor were they owned by Armbruster prior to being exercised.[4]

In attempting to avoid this conclusion, Armbruster cites to a portion of the Divorce Agreement stating all assets identified in the agreement would be the "sole and separate property" of the respective spouses. That general provision, however, cannot overcome the specific provision addressing ownership of the options. Arizona law has long held that "specific contract provisions express the parties' intent more precisely than general provisions [and] specific provisions qualify the meaning of general provisions." *ELM Retirement Center, LP v. Callaway*, 226 Ariz. 287, 246 P.3d 938, 942 (Ariz.Ct.App.2010). Therefore, a general provision of the Divorce Agreement cannot overcome a provision directly on point.

Armbruster also attempts to save his contract claims by arguing he is a third-party beneficiary of the Stock Options Plan. But Arizona law states a third-party beneficiary exists only when the contracting parties intended "to directly benefit that person" and the contracting parties must "indicate that intention in the contract itself." *Sherman v. First American Title Ins. Co.*, 201 Ariz. 564, 38 P.3d 1229, 1232 (Ariz.Ct.App.2002). And "it is not enough that the contract may operate to [the alleged third-party beneficiary's] benefit but it must appear that the parties intended to recognize him as the *primary* party in interest and as privy to the promise." *Id.* (quotation omitted). The Stock Options Plan does not contain sufficient indication of an intent to recognize Armbruster as the primary party in interest. Therefore, Armbruster was not a third-party beneficiary.

Based on the current allegations, Armbruster was neither a party nor a third-party beneficiary to any contract. Thus, Armbruster's claims for breach of contract,[5] intentional interference with contract, breach of fiduciary duty,[6] and breach of the duty of good faith and fair dealing[7] fail as a matter of law.

4. The situation appears analogous to an agreement where a party obtains an option to buy property. An option to buy property is not the same as actually owning the property. *Cf. Diamond v. Chiate*, 300 P.2d 583, 584 (Ariz.1956) (affirming jury verdict that defendant did not own property but merely had "option to buy it").

5. Armbruster cannot enforce a contract if he was not a party to that contract. *See Lofts at Fillmore Condominium Ass'n v. Reliance Commercial Const., Inc.*, 218 Ariz. 574, 190 P.3d 733, 734 (2008) ("As a general rule only the parties and privies to a contract may enforce it.").

6. It is not clear, but Armbruster appears to believe Defendants owed him fiduciary duties based on a contract. Armbruster was not a party to any contract with Defendants and

has not identified any other basis for concluding Defendants owed him fiduciary duties. In other words, the complaint contains no indication that Armbruster and Defendants had a "confidential relationship whose attributes include great intimacy, disclosure of secrets, or intrusting of power." *Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 945 P.2d 317, 335 (Ariz.Ct.App.1996) (quotation omitted). Therefore, the claim for breach of fiduciary duty fails.

7. Absent a fiduciary relationship, Armbruster's claim for breach of the covenant of good faith and fair dealing sounds in contract. *See McAlister v. Citibank*, 171 Ariz. 207, 829 P.2d 1253, 1259 (Ariz.Ct.App.1992) (claim sounds in contract absent "special relationship").

## B. Securities Fraud

Armbruster has asserted a claim under the Arizona statute prohibiting fraud in the purchase or sale of securities. A.R.S. § 44–1991. A plausible claim under this statute requires, at the very least, that the complaint allege a defendant engaged in misconduct "in connection with a transaction . . . involving an offer to sell or buy securities." A.R.S. § 44–1991. This statute has no application to Armbruster's current allegations.

■ The complaint does not establish Armbruster was a party to the Stock Options Plan nor does it identify any other "offer to sell or buy securities" which can be attributed to Defendants. In other words, Armbruster has not met the most basic requirement for asserting a claim under Arizona's securities fraud statute: that he and Defendants were involved in a transaction to either buy or sell securities.[8] Therefore, this claim must be dismissed.

## C. Unjust Enrichment and Conversion

Armbruster alleges Defendants were unjustly enriched when they fired Coppock and she forfeited many of her options. (Doc. 1 at 13). Armbruster also alleges Defendants committed the tort of conversion by reclaiming Coppock's shares. These claims suffer from a wide variety of flaws, including that Armbruster is not the appropriate party to assert them.

■ According to the complaint and the Stock Options Plan, Armbruster did not own any stock options. Thus, to the extent Armbruster believes Defendants wrongfully obtained Coppock's shares either through unjust enrichment or conversion, it is Coppock not Armbruster who

should file suit. *See Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."). But even assuming Armbruster could somehow be viewed as the proper party to assert these claims, his present allegations are insufficient.

■ Addressing first the claim for unjust enrichment, Armbruster is required to allege sufficient facts showing "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) *the absence of justification* for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych,* 226 Ariz. 242, 245 P.3d 927, 936 (Ariz.Ct. App.2011) (emphasis added). According to the Stock Options Plan, all unexercised options would be forfeited three months after an employee's termination. That forfeiture is precisely what happened when Coppock did not exercise her options within three months of her termination date. In these circumstances, there is a clear justification for Defendants' alleged enrichment. Therefore, Armbruster's claim for unjust enrichment fails as a matter of law.

■ As for his conversion claim, Armbruster is required to allege facts establishing Defendants intentionally exercised "dominion or control over [the options] which so seriously interfere[d] with" his right to control the options that Defendants should be "required to pay" Armbruster the full value of the options. *Miller v. Hehlen,* 209 Ariz. 462, 104 P.3d 193, 203 (Ariz.Ct.App.2005) (quotation omitted). Again, the complaint does not allege sufficient facts establishing that Armbruster

8. Assuming the Court could locate Defendants' offer to Armbruster to buy or sell securities, the complaint also fails to identify any misconduct by Defendants in connection with that offer.

owned the options. Thus, Armbruster has not stated a plausible conversion claim.

### D. Fraud

■ Armbruster's last claim is for fraud based on Defendants allegedly engaging in some sort of fraudulent activity by terminating Coppock when they "knew that Coppock was unlikely to purchase any significant amount of [her] shares." (Doc. 1 at 15). The complaint does not state a claim for fraud because it does not allege the requisite elements of a fraud claim. In fact, the complaint does not even identify the most basic requirement of a fraud claim: a material misrepresentation of fact. *Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 647 P.2d 629, 631 (1982) (basic requirement of fraud is a false representation). Armbruster's fraud claim fails and must be dismissed.

### III. Leave to Amend

Having dismissed all of Armbruster's claims, the only remaining issue is whether Armbruster should be granted leave to amend. Armbruster has not requested leave to amend and recent Ninth Circuit authority suggests the Court need not grant leave to amend when no request is made. *Lacey v. Maricopa County*, 693 F.3d 896, 926 (9th Cir.2012) (noting recent changes to Rule 15 change how amendments should be handled). That authority, however, does not squarely overrule earlier authority that leave to amend should be granted "even if no request to amend the pleading was made." *Doe v. United*

*States*, 58 F.3d 494, 497 (9th Cir.1995) (quotation omitted). Therefore, out of an abundance of caution, the Court will grant Armbruster *one* opportunity to amend his complaint. In doing so, Armbruster should proceed with caution because it appears unlikely he will be able to assert any plausible claims and it would be inappropriate to continue to pursue these claims absent significantly different allegations.[9]

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (**Doc. 12**) is **GRANTED** with leave to amend. Armbruster shall file his amended complaint no later than June 21, 2013. The Clerk of Court is directed to enter a judgment of dismissal without prejudice in the event no amended complaint is filed by that date.

---

**9.** Defendants have requested an award of attorneys' fees pursuant to A.R.S. § 12–341.01(B) based on Armbruster asserting a claim for breach of contract. Defendants' request is premature because an award of attorneys' fees must await the identification of the prevailing party. The Court notes, however, that an award of fees is permissible when a party asserts a contract claim but a decision is rendered that no contract existed. *Berthot v. Security Pacific Bank of Ariz.*, 170 Ariz. 318,

823 P.2d 1326, 1332 (Ariz.Ct.App.1991) ("A party is entitled to an award of its attorney's fees under § 12–341.01 if the plaintiff is not entitled to recover on the contract on which the action is based, or if the court finds that the contract on which the action is based does not exist."). Thus, Armbruster might be held liable for Defendants' fees even if he is unsuccessful in pleading that he had a contract with Defendants.