NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

NORTHSTAR BROKERAGE ADVISORY SERVICES, LLC,
An Arizona limited liability company,
*Plaintiff/Appellant*,

*v.*

REED P. COLLINGWOOD and TERESA COLLINGWOOD,
husband and wife, *Defendants/Appellees*.

No. 1 CA-CV 14-0106
FILED 6-2-2015

Appeal from the Superior Court in Maricopa County
No. CV2011-051742
The Honorable Thomas L. LeClaire, Judge

**AFFIRMED**

COUNSEL

Wong Fujii Carter, PC, Phoenix
By Rick K. Carter, John J. Smalanskas, Susan Larsen, Matthew Klopp
*Counsel for Plaintiff/Appellant*

Brooks & Affiliates, PLC, Mesa
By David Paul Brooks, Spenser W. Call
*Counsel for Defendants/Appellees*

_____

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

_____

**O R O Z C O**, Judge:

¶1 Northstar Brokerage Advisory Services, LLC (Northstar) appeals the trial court's grant of Reed P. and Teresa Collingwood's motion for summary judgment. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 In 2000, Northstar became affiliated with LifeUSA/Allianz Life Insurance Company (Allianz) as a Field Marketing Organization (FMO). Reed Collingwood was an Allianz agent responsible for supervising Angel Ayala. In that capacity, Collingwood received "overrides"[1] on commissions paid on policies Ayala wrote.

¶3 Allianz's Commission Guidelines provided that Allianz could charge an agent's account, in a process referred to as a "chargeback," for commissions paid on a policy if Allianz refunded premiums to a policy holder. The guidelines further provided that commissions paid to superiors as overrides on policies agents produced would be subject to chargebacks when the agent's commissions were subject to chargebacks.

¶4 Collingwood's status ultimately was changed from an agent to an Associate Field Marketing Organization (AFMO). As an AFMO, Collingwood served as intermediate management between agents and the FMO. There was no written contract between Northstar and Collingwood, but there was a purported oral agreement whereby Northstar paid Collingwood commission overrides on policies he and his agents sold, and Collingwood agreed to pay Northstar commission chargebacks when policies were terminated.

¶5 Several Allianz policy holders sued Ayala and Allianz to recover premiums they paid. As a result, Allianz canceled or rescinded policies and refunded premiums to policy holders on several policies in

_____

[1] An override is a small portion of an agent's commission paid to the agent's superior in what the parties refer to as the "retail hierarchy."

November 2005. Allianz assessed commission chargebacks to Ayala and also attempted to recover them from Collingwood pursuant to an AFMO Addendum to Collingwood's employment contract with Allianz.

¶6 The AFMO Addendum was a purported agreement whereby Allianz appointed Collingwood as an AFMO "based on [Collingwood's] representation to [Allianz] and [Collingwood's] continuing agreement that the [FMO] named on the reverse side is the only organization which will receive override commissions in respect of policies sold by or through [Collingwood] or [his] agents." Kim Coulter, Northstar's Principal, signed the AMFO Addendum in her capacity as "an officer[] or partner[] of [the] [FMO]." Collingwood disputes signing the document.

¶7 The AFMO Addendum provided:

This ADDENDUM supplements and is part of the AGREEMENT between [Collingwood] and [Allianz][.]

. . .

[Allianz] must approve of any of [Collingwood's] agents who are appointed as a representative of [Allianz] to sell our insurance policies . . . All agents recruited and supervised by [Collingwood] will be contracted through the FMO and [Collingwood]. [Collingwood] agree[s] to be jointly and severally liable with the FMO's Financial Guaranty for such agents pursuant to their Agent Agreements.

After making multiple demands for payment, Allianz cancelled Ayala's contract and notified Collingwood that he had an outstanding debt balance of $16,776 and that Ayala's balance of $208,120.62 would also be "rolled" to Collingwood. In June 2006, Allianz notified Northstar that it would be "transferring" these debts to Northstar. Allianz withheld $1,500 per week in commissions from Northstar until the balance was paid.

¶8 In February 2011, Northstar brought this suit seeking, *inter alia*, indemnification and/or contribution from Collingwood for the commission chargebacks Northstar paid to Allianz. In response, Collingwood argued, "Northstar failed to assert its rights against Allianz. Northstar's issue is with Allianz and was not caused by [Collingwood]." Collingwood also asserted that Northstar's claims were time-barred.

¶9 The trial court granted summary judgment in favor of Collingwood and denied Northstar's Motion for Reconsideration.

Northstar timely appealed, and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1. and -2101.A.1 (West 2015).[2]

## DISCUSSION

**¶10**          We review the grant of summary judgment de novo. *Tritschler v. Allstate Ins. Co.*, 213 Ariz. 505, 509-10, ¶ 8 (App. 2006). We review the facts in the light most favorable to the nonmoving party. *Tilley v. Delci*, 220 Ariz. 233, 236, ¶ 7 (App. 2009). "We will affirm summary judgment only if there is no genuine issue as to any material fact and the party seeking judgment is entitled to judgment as a matter of law." *Williamson v. PVOrbit, Inc.*, 228 Ariz. 69, 71, ¶ 11 (App. 2011) (citations omitted).

I.          Contractual Obligations

          A.          Existence of a Contract

**¶11**          Northstar first argues the trial court erred by concluding that no contractual obligation existed between Northstar and Collingwood. Northstar claims "various agent agreements, Commission Guidelines…and the AFMO Addendum, all of which required Collingwood to pay for chargebacks attributable to him and his agents…formed the basis of Northstar's indemnity and contribution claims."

**¶12**          The trial court concluded that "contractual 'chargebacks' existed, if at all, between Allianz and [Collingwood]." We agree. The Agent Agreement, Commission Guidelines and AFMO Addendum Northstar relies upon were all agreements between Allianz and Collingwood. Although Kim Coulter's signature appears on the AFMO Addendum, the Addendum only outlines the rights and duties of the "AFMO" (Collingwood) and the "Company" (Allianz). As a nonparty to these agreements, Northstar may not enforce the chargeback provisions against Collingwood. *See Lofts at Fillmore Condo. Ass'n v. Reliance Commercial Constr., Inc.*, 218 Ariz. 574, 575, ¶ 5 (2008) ("As a general rule only the parties and privies to the contract may enforce it.") (punctuation and citation omitted).

---

[2]          We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

B.      Third-Party Beneficiary Claim

**¶13**      Alternatively, Northstar contends that it is a "third-party beneficiary under the contractual hierarchy established by Allianz," permitting Northstar to seek "implied indemnity and/or contribution against Collingsworth insofar as Northstar suffered a loss for which Collingwood had a contractual obligation to pay." Essentially, Northstar contends that because Allianz intended to make Collingwood liable to Allianz for chargebacks, it also intended to permit any entity "higher in the Allianz hierarchy" (like Northstar) to seek reimbursement from "anyone lower in the hierarchy" (like Collingwood).

**¶14**      The AFMO Addendum benefitted Northstar insofar as it provided that Northstar was "the only organization which will receive override commissions by and through [Collingwood] or [his] agents." However, an organizational hierarchy, by itself, is insufficient to prove that Northstar was a third-party beneficiary to Allianz and Collingwood's agreements. "For a person to recover as a third-party beneficiary in Arizona, the contracting parties must intend to directly benefit that person and must indicate that intention in the contract itself." *Sherman v. First Am. Title Ins. Co.*, 201 Ariz. 564, 567, ¶ 6 (App. 2002). "[I]t is not enough that the contract may operate to the [third party's] benefit but it must appear that the parties intended to recognize [the third party] as the Primary party in interest and as privy to the promise." *Basurto v. Utah Constr. & Mining Co.*, 15 Ariz. App 35, 39 (App. 1971).

**¶15**      Although not explicitly, the AFMO Addendum did note that Collingwood and Northstar would be jointly and severally liable to Allianz for Collingwood's agents under their agent agreements, but there was no express provision concerning chargebacks, indemnification, or contribution for Northstar's benefit. Moreover, there is nothing in the AMFO Addendum that suggests Allianz and Collingwood, as the parties to the agreement to which the AMFO Addendum modified, intended to make Northstar privy to the original agreement. The AMFO Addendum explicitly "supplements and is part of the AGREEMENT between [Collingwood] and [Allianz]." Moreover, the AMFO Addendum did not afford Northstar rights and responsibilities as it did for both Allianz and Collingwood. Because Northstar was not an intended beneficiary of a

contractual right to indemnification or contribution, we affirm the trial court's ruling on those issues.[3]

II.     Statute of Limitation

     A.     Applicable Statute

¶16          Northstar argues the trial court erred by not applying the six-year statute of limitations applicable to claims arising from written contracts. *See* A.R.S. § 12-548.A. The trial court determined that the statute of limitations applicable to all of Northstar's claims were "either three or four years based upon implied contractual theories[.]"

¶17          For a claim to be subject to the six-year statute of limitation under A.R.S. § 12-548.A, "the promise upon which the action is based must itself be written." *Kersten v. Cont'l Bank*, 129 Ariz. 44, 47 (App. 1981); *see also Beane v. Tucson Med. Ctr.*, 13 Ariz. App. 436, 438 (App. 1970) ("In order for a cause of action to be founded upon a contract in writing, the instrument itself must contain an undertaking to do the thing for [the] non-performance of which the action is brought.").

¶18          As discussed above, Northstar's claims are based upon written contracts entered into by Allianz and Collingwood. Moreover, those contracts do not contain express provisions requiring Collingwood to pay Northstar for chargebacks nor do they contain indemnity or contribution provisions. Thus, Northstar's claims are not based upon a written contract within the purview of A.R.S. § 12-548, meaning at most a four-year statute of limitations applied. *See* A.R.S. § 12-550.

     B.     Claim Accrual Date

¶19          Northstar further contends that summary judgment was improper because there was a factual dispute as to when its claims arose. Northstar argues its claims arose: 1) June 2008, when Allianz began

---

[3]          Northstar also contends that summary judgment was improper because there was a factual dispute as to whether Collingwood signed the AFMO Addendum. Because the analysis set forth above assumes that Collingwood signed the AFMO Addendum, that claim does not present a genuine issue of material fact preventing summary judgment.

withholding commissions from Northstar; 2) 2011, when Allianz ceased withholding commissions; or 3) with each withheld commission.

¶20        We agree with the trial court's finding that the statute of limitations "begins when the obligation is established, not when payment begins." "As a general matter, a cause of action accrues, and the statute of limitation commences, when one party is able to sue another." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 588 (1995).

¶21        In this case, the purported causes of action accrued in June 2006, when Allianz notified Northstar that it was transferring Collingwood and Ayala's debt. Thus, the statute of limitations expired in June 2010. *See* A.R.S. § 12-550. Northstar, however, did not file suit until February 2011 and thus, the trial court properly held that its claims were barred.

III.    Attorney Fees and Costs

¶22        Both parties seek their attorney fees and costs on appeal pursuant to A.R.S. §§ 12-341 and -341.01. In our discretion, we deny Collingwood his attorney fees. As the prevailing party, he is entitled to his taxable costs contingent upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶23        For the foregoing reasons, we affirm the trial court's grant of Collingwood's motion for summary judgment and award Collingwood his taxable costs on appeal.



Ruth A. Willingham · Clerk of the Court
FILED: ama